**Richard COLUCCI, Plaintiff–Appellant,**

v.

**TOWN OF VAIL, Defendant–Appellee.**

**No. 09CA0006.**

Colorado Court of Appeals,
Div. A.

Oct. 29, 2009.

Francis K. Culkin, Denver, Colorado, for Plaintiff–Appellant.

Hall & Evans LLC, David R. Brougham, Denver, Colorado, for Defendant–Appellee.

Opinion by Chief Judge DAVIDSON.

Plaintiff, Richard Colucci, appeals from the judgment dismissing his personal injury claims against defendant, Town of Vail (town), for lack of subject matter jurisdiction under the Colorado Governmental Immunity Act, sections 24–10–101 to –120, C.R.S.2009 (CGIA). The dispositive issue on appeal is whether the pedestrian overpass on which plaintiff was injured constitutes a "sidewalk" under the CGIA, section 24–10–103(6), C.R.S. 2009, such that the town's immunity may be waived. We conclude that it does and, therefore, we reverse and remand.

## I.  Background

The complaint alleged that plaintiff slipped on accumulated snow and ice, and sustained injuries, while descending from a pedestrian overpass in Vail, Colorado.  It is undisputed that the pedestrian overpass—comprised of an elevated walkway and the stairway on which plaintiff slipped—provides access to the town (which lies on the south side of Interstate 70) from a bus stop on the frontage road on the north side of I–70. Plaintiff's complaint alleged that the accumulation of snow and ice on the "sidewalk" on which he fell constituted a "dangerous condition" for which governmental immunity has been waived.  In its motion to dismiss, the town argued that the pedestrian overpass did not constitute a "sidewalk" for purposes of the CGIA. The trial court agreed and, without holding a hearing, dismissed plaintiff's claims.  Plaintiff brought this interlocutory appeal pursuant to section 24–10–108, C.R.S. 2009.

## II.  Standard of Review

The existence of immunity under the CGIA is an issue of subject matter jurisdiction. *Fogg v. Macaluso,* 892 P.2d 271, 276 (Colo.1995).  "As such, if raised before trial, the issue is properly addressed pursuant to a C.R.C.P.  12(b)(1)  motion  to  dismiss...." *Corsentino v. Cordova,* 4 P.3d 1082, 1087 (Colo.2000).  "When the jurisdictional issue involves a factual dispute, a reviewing court employs the clearly erroneous standard of review in considering the trial court's findings of jurisdictional fact." *Springer v. City & County of Denver,* 13 P.3d 794, 798 (Colo. 2000).  However, an appellate court reviews jurisdictional rulings de novo where the relevant facts are not in dispute and the issue is one of law.  *Tidwell v. City & County of Denver,* 83 P.3d 75, 81 (Colo.2003).

Here, the facts relating to the location and nature of the pedestrian overpass are not in

dispute and we review de novo the meaning of a statutory term. *See Fogg,* 892 P.2d at 273 (construction of a statute is a question of law).

■ The primary task in construing a statute is to determine and give effect to the intent, or purpose, of the General Assembly. *State v. Hartsough,* 790 P.2d 836, 838 (Colo. 1990). We look first to the statutory language itself, giving words and phrases their commonly understood meanings. *Barela v. Beye,* 916 P.2d 668, 674 (Colo.App.1996).

### III. Definition of a "Sidewalk" Under the CGIA

A public entity in Colorado is "immune from liability in all claims for injury which lie in tort or could lie in tort ... except as provided otherwise" in section 24–10–106, C.R.S.2009. § 24–10–106(1), C.R.S.2009. Section 24–10–106(1)(d)(I), C.R.S.2009, waives a public entity's immunity for injuries resulting from a dangerous condition "of any public highway, road, street, or sidewalk within the corporate limits of any municipality." The CGIA defines "sidewalk" as "that portion of a public roadway between the curb lines or the lateral lines of the traveled portion and the adjacent property lines which is constructed, designed, maintained, and intended for the use of pedestrians." § 24–10–103(6).

### A. A "sidewalk" is part of a "public roadway."

■ In interpreting the statutory definition, the trial court focused on the clause providing that a sidewalk is a "portion of a public roadway." *Id.* Because the CGIA does not define "public roadway," the trial court turned to the Colorado Uniform Motor Vehicle Law sections 42–1–101 to –4–2204, C.R.S.2009 (UMVL), which defines "roadway" in part as "that portion of a highway ... ordinarily used for vehicular travel ...." § 42–1–102(85), C.R.S.2009. Consequently, the court reasoned that because the town's pedestrian overpass "offers no means for vehicular travel," it was not a "portion of a public roadway" and therefore not a "sidewalk" as defined in the CGIA.

■ Plaintiff contends that the trial court was wrong to rely on a statutory definition other than that set forth in the CGIA, and wrong to define "sidewalk" by reading the word "roadway" out of context. To the contrary, plaintiff argues, had the trial court simply applied the undisputed facts to the CGIA's particular definition of "sidewalk," it would have concluded that the pedestrian overpass was included within the scope of that term. We agree. The trial court should not have relied on the UMVL to supplement a term clearly defined in the CGIA. "[T]he interpretation of one statute by reference to an unrelated statute is an unreliable means of ascertaining legislative intent." *Bertrand v. Bd. of County Comm'rs,* 872 P.2d 223, 228 (Colo.1994) (citing 2B Norman J. Singer, *Sutherland Statutory Construction* § 53.05, at 238 (5th ed.1992)).

Here, in turning to the provisions of the UMVL, the court relied on *Stanley v. Adams County School District 27J,* 942 P.2d 1322 (Colo.App.1997), which, in determining whether a driveway to a public building constituted a "public road" under the CGIA, referenced various definitions of roadway set forth in the UMVL to provide a "framework for interpreting the General Assembly's use of such categories in the [C]GIA." *Id.* at 1324.

However, unlike the term "public road" in the CGIA, the General Assembly has within that statute given the term "sidewalk" a specific, technical definition. We find nothing in the language of the CGIA, nor does the town provide any persuasive rationale, to warrant reference to a different statute to add to or modify what the legislature has crafted as an explicitly defined term. *Cf.* § 24–10–103(2.7), C.R.S.2009 (adding a specific reference to the definition of motor vehicle set forth in the UMVL).

In fact, a plain reading of both statutes shows that the terms "sidewalk" and "roadway," as used respectively in the relevant portions of the CGIA and the UMVL, are not only unrelated but are mutually exclusive. *Compare* § 24–10–103(6) (defining a "sidewalk" as "*that portion* of a public roadway ... *intended for the use of pedestrians*" (emphasis added)) *with* § 42–1–102(85) (de-

fining a roadway as "*that portion* of a highway improved, designed, or ordinarily used for vehicular travel, *exclusive of the sidewalk*" (emphasis added)).

Thus, contrary to the conclusion of the trial court, we conclude that, in the CGIA, the General Assembly intended the term "public roadway" (a highway designed for vehicular travel) to include the portion intended for pedestrian use.

### B. The pedestrian overpass constituted a "sidewalk" under the CGIA.

■ We agree with plaintiff that, after parsing the definition of "sidewalk" as set forth in the CGIA and applying it here, it includes the town's pedestrian overpass:

1. The statutory definition of "sidewalk" requires that it be "constructed, designed, maintained, and intended for the use of pedestrians." § 24–10–103(6). Here, it was undisputed that the stairway on which plaintiff fell, and the attached walkway, are intended for pedestrian use.

2. The statute further requires that to constitute a "sidewalk," the pedestrian portion of the roadway must be located between the curb lines or the lateral lines of the traveled portion of the roadway and the adjacent property lines. Although the town correctly points out that this language requires that a pedestrian pathway be adjacent to a public roadway, by contending that the overpass is not located between curb lines and adjacent property lines, it incorrectly conflates "adjacent" with "parallel." To the contrary, a pedestrian pathway *perpendicular* to a public roadway, as here, also can be contained between the curb lines of the traveled part of a road and the adjacent property lines. Thus, the dispositive factor is whether the pathway crosses an adjacent property line, and not whether it is parallel or perpendicular to it. *Cf. Stanley*, 942 P.2d at 1325 (service driveway perpendicular to adjoining roadway and sidewalk that extended across property line was not a "sidewalk" under the CGIA).

The following diagram illustrates how the overpass here meets the statutory requirement that it be located between the curb lines of the road and the adjacent property lines:

**North adjacent property line**

**North curb (lateral) line**

Bus stop

Frontage road

**South curb (lateral) line**

Pedestrian overpass

I-70

Stairway

**X**

Location where plaintiff fell

**South adjacent property line**

Specifically, the diagram shows that the stairway on which plaintiff fell lies between I–70's curb or lateral line and the adjacent property line. The attached walkway's northern terminus is the bus stop, which lies between the frontage road's curb or lateral line and the property line. Thus, the overpass does not cross either adjacent property line, and it is undisputed that I–70 and the frontage road are roadways used for vehicular traffic.

Accordingly, we agree with plaintiff that the overpass constitutes a pedestrian walkway that originates at the curb line of the traveled portion of a public roadway, and does not intersect an adjacent property line. Thus, contrary to the determination of the

**222**

trial court, we conclude as a matter of law that plaintiff fell on a "sidewalk" as defined by the CGIA.

### IV. "Dangerous Condition" Under the CGIA

■ Governmental immunity has been waived for dangerous conditions on public sidewalks. § 24–10–106(1). A dangerous condition can include accumulations of snow and ice under certain circumstances. *See* § 24–10–103(1), C.R.S.2009; *Smith v. Town of Snowmass Village*, 919 P.2d 868, 871 (Colo.App.1996). Because it determined that plaintiff had not fallen on a "sidewalk," the trial court did not reach the town's alternative argument that the alleged ice on the stairway did not constitute a "dangerous condition" under the CGIA.

Because a determination of this issue involves disputed issues of fact, we agree with plaintiff, and the town does not disagree, that its resolution requires a remand to the trial court for an evidentiary hearing. *See Padilla v. Sch. Dist. No. 1*, 25 P.3d 1176, 1180 (Colo.2001) ("When the alleged jurisdictional facts are in dispute, the trial court should conduct an evidentiary hearing before ruling on the jurisdictional issue."); *Fogg*, 892 P.2d at 276; *Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 926 (Colo.1993) (evidentiary hearing would have "permitted the full development of a factual record").

The judgment is reversed and the case remanded to the trial court with directions to reinstate plaintiff's claims against the town and conduct further proceedings consistent with this opinion.

Judge STERNBERG * and Judge NIETO *, concur.