2012 COA 18

**COLORADO SPECIAL DISTRICTS PROPERTY AND LIABILITY POOL, Plaintiff–Appellee,**

v.

**William S. LYONS, III; and William S. Lyons, Jr., Defendants and Third–Party Plaintiffs–Appellants,**

v.

**County Technical Services, Inc., Third–Party Defendant–Appellee.**

No. 10CA2571.

Colorado Court of Appeals, Div. VI.

Feb. 2, 2012.

Certiorari Dismissed March 2, 2012.

Nathan, Bremer, Dumm & Myers, P.C., J. Andrew Nathan, Marni Nathan Kloster, Denver, Colorado, for Plaintiff–Appellee and Third–Party Defendant–Appellee.

Roberts Levin Rosenberg, P.C., Bradley A. Levin, Kerri J. Atencio, Denver, Colorado, for Defendants–Appellants.

Opinion by Judge LOEB.

¶ 1 Defendants, William S. Lyons Jr. and William S. Lyons III (the Lyonses), appeal the district court's order, pursuant to C.R.C.P. 12(b)(1), dismissing their claim for bad faith breach of insurance contract against plaintiff, Colorado Special Districts Property and Liability Pool (the Pool), and third-party defendant, County Technical Services, Inc. (CTSI), on the ground that the Pool and CTSI are immune from liability under the Colorado Governmental Immunity Act (CGIA). We affirm and remand with directions.

## I. Background and Procedural History

¶ 2 The following facts are undisputed for the purposes of this appeal.

¶ 3 In early 2006, several banks purchased bonds issued by Lincoln Creek Metropolitan District (the District), a quasi-municipal corporation located in Douglas County. The District issued the bonds to finance construction of a proposed master-planned residential community called Lincoln Creek Village. The Lyonses were members of the District's board of directors. The Lyonses were also on the board of directors of LCV, LLC, which was the developer of Lincoln Creek Village.

¶ 4 As pertinent here, the banks brought an action (the underlying lawsuit) against LCV and the Lyonses in La Plata County District Court, alleging claims for damages arising from the offering and sale of the bonds issued by the District. The Lyonses requested that the Pool defend and indemnify them in the underlying lawsuit, pursuant to a certificate of insurance (the insurance

policy) issued to the District by the Pool. Initially, the Pool agreed to defend the Lyonses, subject to a reservation of rights.

¶ 5 Subsequently, the Pool filed a complaint for declaratory judgment in this action, in which it asked the district court to find that the Pool had no duty to defend or indemnify the Lyonses in the underlying lawsuit. The Pool argued that the Lyonses were not covered under the insurance policy because the banks in the underlying lawsuit did not name the District as a defendant or sue the Lyonses in their capacity as members of the District's board of directors. Instead, the Pool argued that the banks were suing the Lyonses only in their capacity as "developers" and not in their capacity as members of the District's board of directors. Accordingly, the Pool argued that, for purposes of the underlying lawsuit, the Lyonses were not covered by the insurance policy.

¶ 6 In response to the Pool's complaint for declaratory judgment, the Lyonses filed a combined answer, counterclaim, and third-party complaint. The Lyonses answered the allegations contained the Pool's complaint and asserted two counterclaims against the Pool for breach of contract and bad faith breach of insurance contract. Characterizing CTSI as the "administrator for [the insurance policy] on behalf of the Pool," the Lyonses also named CTSI as a third-party defendant on the bad faith breach of insurance contract claim. In their answer to the Lyonses' counterclaim and third-party complaint, the Pool and CTSI expressly raised immunity under the CGIA as a defense.

¶ 7 As pertinent to this appeal, the Pool and CTSI then filed a motion to stay proceedings regarding the Lyonses' counterclaims and third-party claim, with the exception of any proceedings regarding a motion to dismiss under C.R.C.P. 12(b)(1) and the CGIA. After considering the Lyonses' response opposing the motion to stay, the district court granted the Pool and CTSI's motion to stay.

¶ 8 Thereafter, the Pool and CTSI filed a motion to dismiss the Lyonses' bad faith breach of insurance contract claim under C.R.C.P. 12(b)(1) and the CGIA. In their motion, which was supported by affidavits

and documentary evidence, the Pool and CTSI argued that the CGIA was applicable to the Lyonses' claim of bad faith and that the Pool and CTSI were both "public entities" and, therefore, immune under the CGIA.

¶ 9 The Lyonses filed a response to the motion to dismiss, in which they argued that CTSI was not a public entity; that the Lyonses provided the Pool and CTSI with adequate notice of their claims, as required by the CGIA; and that the Lyonses should be permitted to conduct discovery on the question whether the Pool and CTSI waived their immunity by resolution under section 24–10–104, C.R.S.2011. In their response, the Lyonses conceded that the Pool was a public entity under the CGIA. The Lyonses also filed a motion to stay proceedings in this case pending the resolution of all claims in the underlying lawsuit.

¶ 10 The Pool and CTSI filed a reply brief in support of their C.R.C.P. 12(b)(1) motion, attaching an affidavit from their general counsel that stated that neither the Pool nor CTSI had adopted a resolution waiving immunity under section 24–10–104.

¶ 11 In a written order, the district court found that the CGIA was applicable to the Lyonses' bad faith claim because bad faith breach of an insurance contract is a tort claim that exists independently of the underlying breach of contract claim against the Pool; that both the Pool and CTSI were public entities and were, therefore, immune under the CGIA; and that the Lyonses failed to provide the Pool or CTSI with the required statutory notice of their claims. Accordingly, the district court granted the Pool and CTSI's motion to dismiss the Lyonses' bad faith claim under C.R.C.P. 12(b)(1), which constituted a final judgment subject to interlocutory appeal. § 24–10–108, C.R.S. 2011. The court also denied the Lyonses' motion to stay.

¶ 12 This appeal followed.

## II. CGIA

¶ 13 The Lyonses contend that the district court erred in dismissing their claim for bad

faith breach of insurance contract under the CGIA. We disagree.

### A. Standard of Review

¶ 14 The existence of immunity under the CGIA is an issue of subject matter jurisdiction. *Colucci v. Town of Vail*, 232 P.3d 218, 219 (Colo.App.2009). "As such, if raised before trial, the issue is properly addressed pursuant to a C.R.C.P. 12(b)(1) motion to dismiss...." *Corsentino v. Cordova*, 4 P.3d 1082, 1087 (Colo.2000); *accord Colucci*, 232 P.3d at 219. "When the jurisdictional issue involves a factual dispute, a reviewing court employs the clearly erroneous standard of review in considering the [district] court's findings of jurisdictional fact." *Springer v. City & Cnty. of Denver*, 13 P.3d 794, 798 (Colo.2000). However, where, as here, the relevant facts are not in dispute and the issue is one of law, an appellate court reviews jurisdictional rulings de novo. *Tidwell v. City & Cnty. of Denver*, 83 P.3d 75, 81 (Colo. 2003); *Colucci*, 232 P.3d at 219.

¶ 15 Moreover, where, as here, the relevant facts are not in dispute and the issues raised on appeal relate to the proper interpretation of a statute, we review de novo the meaning of a statutory term. *See Fogg v. Macaluso*, 892 P.2d 271, 273 (Colo.1995) (construction of a statute is a question of law).

¶ 16 In construing a statute, our primary task is to give effect to the intent of the General Assembly, which we do by looking to the plain language of the statute. *Colorado Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 593 (Colo.2005). We must give effect to each word and construe the statute as a whole, giving its terms consistent, harmonious, and sensible effect, while avoiding an illogical or absurd result. *Id.*

### B. Bad Faith Breach of Insurance Contract Claim

¶ 17 The Lyonses first contend that their bad faith breach of insurance contract claim against the Pool and CTSI is a contract claim, not a tort claim. Accordingly, the Lyonses contend that the district court erred in finding that the CGIA was applicable to their claim. We disagree.

¶ 18 The CGIA provides a public entity the defense of sovereign immunity against actions for tort injuries, subject to an enumerated list of exceptions not relevant here. § 24–10–106, C.R.S.2011. Specifically, the CGIA provides that "[a] public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort." § 24–10–106(1), C.R.S.2011. Accordingly, "[t]he CGIA does not apply to actions grounded in contract." *Rocky Mountain Health Maint. Org., Inc. v. Colorado Dep't of Health Care Policy & Fin.*, 54 P.3d 913, 917 (Colo.App. 2001).

¶ 19 Here, the district court found that the Lyonses' bad faith breach of contract claim against the Pool and CTSI was a tort claim that existed independently of the Lyonses' underlying contract claim against the Pool. Specifically, the district court found that "bad faith breach is a tort claim," and, therefore, "the CGIA may provide immunity against such a claim." We agree with the district court.

¶ 20 In *Jordan v. City of Aurora*, 876 P.2d 38 (Colo.App.1993), a division of this court expressly held that bad faith breach of an insurance contract is a tort claim, concluding as follows: "[B]ecause a claim of bad faith is a tort, and none of the exceptions contained in § 24–10–106 apply, the claim is barred by sovereign immunity." *Id.* at 41. On appeal, the Lyonses argue that *Jordan* was wrongly decided and that we should decline to follow it. However, in our view, *Jordan* was correctly decided and is dispositive of the Lyonses' contention here. Indeed, *Jordan* is consistent with a long line of appellate cases in Colorado concluding that bad faith breach of an insurance contract is a tort claim, not a contract claim. *See Farmers Grp., Inc. v. Trimble*, 691 P.2d 1138, 1141 (Colo.1984) (discussing the "basis for liability in tort" for bad faith breach of an insurance contract); *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 496 (Colo.App.2011) (noting that bad faith breach arises in tort); *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 571 (Colo. App.2003) (stating that bad faith breach sounds in tort).

¶ 21 Accordingly, the district court did not err in concluding that the Lyonses' bad faith claim against the Pool and CTSI was a tort claim and, therefore, that the CGIA applies to that claim.

### C.  Public Entity

¶ 22 The Lyonses next contend that the district court erred in determining that CTSI was a "public entity" within the meaning of the CGIA. Accordingly, the Lyonses argue that CTSI is not immune under the CGIA. We disagree.

¶ 23 The CGIA provides that, with certain exceptions not relevant here, "[a] public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort." § 24–10–106(1).  The statutory definition of "public entity" in the CGIA is as follows:

> "Public entity" means the state, county, city and county, municipality, school district, special improvement district, and every other kind of district, agency, instrumentality, or political subdivision thereof organized pursuant to law and any separate entity created by intergovernmental contract or cooperation only between or among the state, county, city and county, municipality, school district, special improvement district, and every other kind of district, agency, instrumentality, or political subdivision thereof.

§ 24–10–103(5), C.R.S.2011.  We first analyze the Pool's status before turning to CTSI.

### 1.  The Pool

¶ 24 At the outset, we note that both parties concede, as they did in the district court, that the Pool is a public entity.  However, although the Pool's status as a public entity is not in dispute, the Lyonses' characterization of the Pool's exact status under the statutory definition is somewhat unclear.  In their opening brief, the Lyonses characterize the Pool as a separate entity that was "itself created by intergovernmental contract."  In their reply brief, however, the Lyonses characterize the Pool as an "instrumentality of the special districts" that formed it.  For the reasons that follow, we conclude, as did the district court, that the Pool is a "separate entity created by intergovernmental contract or cooperation" among special districts.  *See* § 24–10–103(5).

¶ 25 The definition of "public entity" includes any "separate entity created by intergovernmental contract or cooperation" composed only of entities that are themselves public entities under the statutory definition.  *See id.; Podboy v. Fraternal Order of Police, Denver Sheriff Lodge 27,* 94 P.3d 1226, 1229 (Colo.App.2004) (given the term "intergovernmental," all contracting entities must be "governmental"); *see also Walker v. Bd. of Trs.,* 76 F.Supp.2d 1105, 1109 (D.Colo.1999).

¶ 26 Moreover, section 24–10–115.5, C.R.S. 2011, specifically authorizes public entities to form self-insurance pools.  As pertinent here, the statute states that "[p]ublic entities may cooperate with one another to form a self-insurance pool to provide all or part of the insurance coverage authorized by this article." § 24–10–115.5(1), C.R.S.2011.

¶ 27 Here, the district court characterized the Pool as a "self-insurance pool established pursuant to an intergovernmental agreement between special districts."  Accordingly, the district court held that the Pool was a public entity within the meaning of the statutory definition.

¶ 28 We agree with the district court.  The parties concede that the Pool is a public entity, and there is no dispute that the special districts composing the Pool are themselves public entities.  *See* § 24–10–103(5).  Therefore, because the special districts composing the Pool are public entities, they may form a "separate entity created by intergovernmental contract or cooperation" that is itself a public entity.  *See* § 24–10–103(5); *Podboy,* 94 P.3d at 1229; *see also Walker,* 76 F.Supp.2d at 1109.  Moreover, as public entities, the special districts are specifically authorized under the CGIA to "cooperate with one another to form a self-insurance pool." § 24–10–115.5; *see also J.P. Meyer Trucking & Constr. Inc. v. Colo. Sch. Dists. Self Ins. Pool,* 18 P.3d 198, 200 n. 1 (Colo.2001) ("Through a public entity self-insurance pool, public entities may, rather than purchase insurance, choose to retain their risk and pool their resources to cover their exposure

to such risk. A public entity self-insurance pool is formed by an agreement among the entities.").

¶ 29 The record is undisputed that the Pool was created pursuant to an "intergovernmental agreement." Specifically, the agreement creating the Pool, titled "Intergovernmental Agreement for the Colorado Special Districts Property and Liability Pool," provides that the Pool was created "as a separate and independent governmental and legal entity" pursuant to article XIV, section 18(2) of the Colorado Constitution and several statutory provisions, including section 24–10–115.5. *See City of Arvada v. Colorado Intergovernmental Risk Sharing Agency,* 19 P.3d 10, 13 (Colo.2001) (stating that an insurance pool under section 24–10–115.5 "is, in essence, an extension of each member, as the funds that provide the coverage come directly from the members, and the type and extent of coverage is determined collectively by the members themselves"); *see also J.P. Meyer,* 18 P.3d at 200 n. 1.

¶ 30 Accordingly, we agree with the district court and conclude that the Pool is a "separate entity created by intergovernmental contract" among its special district members.

### 2. CTSI

¶ 31 On appeal, the Lyonses contend that the district court erred in finding that CTSI is a public entity and, thus, immune under the CGIA. Specifically, the Lyonses contend that CTSI does not fit within the statutory definition of "public entity," because it is simply an "instrumentality" of an "instrumentality." We disagree.

#### a. Law

¶ 32 As noted, the term "public entity" includes "any separate entity created by intergovernmental contract or cooperation only between or among the ... county ..., and any every other kind of district, agency, instrumentality, or political subdivision *thereof.*" § 24–10–103(5) (emphasis added). Accordingly, "every other kind of district, agency, instrumentality, or political subdivision" of "any separate entity created by in-

tergovernmental contract" is also a public entity under the plain language of the statute. *See Colorado Water Conservation Bd.,* 109 P.3d at 593.

¶ 33 The term "instrumentality" is not defined in the statute, but divisions of this court have interpreted the term. In *Robinson v. Colorado State Lottery Division,* 155 P.3d 409 (Colo.App.2006), *aff'd in part and rev'd in part,* 179 P.3d 998 (Colo.2008), a division of this court considered whether Texaco was an instrumentality of the state because it was a licensed sales agent of the Colorado State Lottery Division. *Id.* at 413. In analyzing that issue, the division first turned to the dictionary definition of the term "instrumentality," noting that the term is "commonly defined as 'the quality or state of being instrumental: a condition of serving as an intermediary.'" *Id.* (quoting *Webster's Third New International Dictionary* 1192 (1986)). Texaco argued that it was an instrumentality of the state, because the Lottery Division, itself a public entity, had granted Texaco a license to sell instant lottery scratch tickets to the public. *Id.*

¶ 34 The division interpreted the term "instrumentality" in light of the context in which it appears in the statute, given that the term appears "in the context of other entities that are public in nature." *Id.* at 414. Accordingly, the court concluded that instrumentalities of public entities encompass only "those entities that are governmental in nature." *Id.* Moreover, in construing the term, the division also considered a "central legislative purpose" of the CGIA, namely, "to limit the potential liability of public entities for compensatory money damages in tort." *Id.* In light of these considerations, the *Robinson* division held that Texaco was not immune under the CGIA because Texaco was a private corporation and therefore not governmental in nature, and because any tort liability would be paid by Texaco, not the state's taxpayers. *Id.*

¶ 35 Similarly, in *Moran v. Standard Insurance Co.,* 187 P.3d 1162 (Colo.App.2008), a division of this court held that, in accordance with *Robinson,* a private insurance company was not an instrumentality of the Public Employees Retirement Association, itself a pub-

lic entity. *Id.* at 1166. Specifically, the division in *Moran* concluded that the insurance company's "status as a private corporation, even one that has entered [into] a contract with a public entity, precludes its treatment as a public entity under the CGIA." *Id.* Accordingly, the division held that the insurance company was not an instrumentality of a public entity and therefore not a public entity itself. *Id.*

■ ¶ 36 Therefore, in light of *Robinson* and *Moran*, in analyzing whether an entity is an instrumentality of a public entity, a court should determine whether the entity is "governmental" in nature. *Robinson*, 155 P.3d at 414. An entity is governmental in nature if the entity is "public," as opposed to "private." *Id.* ("There is no indication that the General Assembly intended to expand the scope of the [C]GIA to include any *private person or corporation* that entered into some type of agreement with a public entity.") (emphasis added); *Moran*, 187 P.3d at 1166 ("[Insurance company's] status as a *private corporation* ... precludes its treatment as a public entity....") (emphasis added).

¶ 37 As noted by the district court here, in *Colorado Ass'n of Public Employees v. Board of Regents of University of Colorado*, 804 P.2d 138 (Colo.1990), the Colorado Supreme Court provided some guidance on the distinction between public and private corporations, albeit not in the context of the CGIA. In *Public Employees*, the supreme court held that, despite the reorganization of the University of Colorado University Hospital as a private, nonprofit corporation, the hospital was still a "public entity" in the context of the Colorado Constitution. *Id.* at 144. In making this determination, the court compared private and public corporations, finding that private nonprofit corporations are formed by private individuals or entities for a public purpose. *Id.* at 142. "In contrast, public corporations are created as subdivisions of the state as an expedient device to carry out the functions of government." *Id.* at 143. Accordingly, "[p]ublic corporations are all those created specifically for public purposes as instruments or agencies to increase the efficiency of government, supply public wants, and promote the public wel-

fare." *Id.* (quoting *People ex rel. Rogers v. Letford*, 102 Colo. 284, 297, 79 P.2d 274, 281 (1938)). Therefore, the court held that determining whether a corporation is private or public depends on (1) whether the entity was founded and is maintained by private individuals or a private corporation, and (2) whether the state is involved in the management or control of its property or internal operations. *Id.*

### b. Analysis

¶ 38 Here, based on the applicable law and the undisputed evidence submitted with the Pool and CTSI's motion to dismiss, we perceive two alternative ways to analyze CTSI's status as a public entity under the statute.

¶ 39 First, the district court concluded that CTSI was a "public entity" because it was an "instrumentality" or "political subdivision" of the Pool. The court specifically found that CTSI's board of directors is governed solely by individuals appointed by the various self-insurance pools it serves (including the Pool), and that the Lyonses failed to contest the fact that control of CTSI is vested in the self-insurance pools. The court also noted that CTSI was formed for the sole purpose of "providing services for public entities," including various self-insurance pools, and that the Lyonses did not identify any services CTSI provides to private, nongovernmental entities. Additionally, the court also contrasted CTSI with the insurance company in *Moran*, noting that the insurance company in *Moran* was a private company, organized for profit, and formed and controlled by private interests. In contrast, the court found that "CTSI has none of those characteristics." Accordingly, the court concluded that CTSI was a public corporation and, therefore, a "public entity" under the CGIA.

■ ¶ 40 We agree with the district court's analysis and similarly conclude that CTSI is a public entity under the CGIA. First, the undisputed evidence submitted with the Pool and CTSI's motion to dismiss showed that CTSI is a nonprofit corporation formed by various counties under the then existing Colorado Nonprofit Corporation Act and that it operates exclusively for the purpose of lessening the burden on Colorado

county governments. According to its articles of incorporation, CTSI has no shareholders or members, and its primary purpose is to provide general management, risk management, loss prevention, and administrative and technical services to self-insurance pools, such as the Pool here, which are composed of various Colorado counties and special districts. As part of its responsibilities, CTSI handles and manages insurance claims made against self-insurance pools, including the Pool.

¶ 41 Second, the evidence is undisputed that CTSI was founded and is maintained by public entities, namely, the various counties and self-insurance pools it serves. CTSI's bylaws make clear that CTSI is governed by a board of directors composed exclusively of individuals who also serve as directors on the various self-insurance pools CTSI was created to serve. We also agree with the district court that, based on the undisputed evidence, CTSI "has none of [the] characteristics" of the insurance company in *Moran*, which the court noted was "formed and controlled by private interests." Here, by contrast, the court specifically found that CTSI was formed as a nonprofit corporation by public entities with the sole purpose of providing services "for public entities, namely various self-insurance pools." [1]

¶ 42 Third, the record shows that public entities (the various self-insurance pools) are involved in the management or control of CTSI's property and internal operations. As noted, CTSI is governed by a board of directors wholly composed of individuals who also serve as directors on the boards of the self-insurance pools CTSI was created to serve. Therefore, the various public entity self-insurance pools wholly manage and control CTSI.

¶ 43 Fourth, CTSI is appropriately characterized as a public corporation in light of additional considerations discussed by the supreme court in *Public Employees* and the

division in *Robinson*. In *Public Employees*, the court stated that "public corporations are created as subdivisions of the state as an expedient device to carry out the functions of government." *Public Employees*, 804 P.2d at 143. Here, according to CTSI's articles of incorporation, and consistent with the district court's findings, CTSI "shall be operated exclusively for the charitable purpose of lessening the burden of Colorado county governments," and its "primary purpose" is to "serve Colorado county governments" and provide services "which would or could otherwise be provided by Colorado county or [sic] governments." Therefore, CTSI was created for public purposes and "as an expedient device to carry out the functions of government." *See id.; see also Farina v. City & Cnty. of Denver*, 940 P.2d 1004, 1008 (Colo. App.1996) (distinction between private and public corporations depends, in part, on whether a corporation was created to increase governmental efficiency).

¶ 44 In *Robinson*, a division of this court rejected Texaco's argument that it was an "instrumentality" of the state, in part, because any liability imposed on Texaco would be paid by Texaco, not the state's taxpayers. *Robinson*, 155 P.3d at 414. Here, by contrast, according to undisputed evidence in the record, CTSI has no financial autonomy, but is instead funded by the various self-insurance pools. Indeed, the record shows that CTSI credits any unused money back to the pools it serves. Accordingly, any tort liability imposed on CTSI would be paid by the self-insurance pools and, therefore, the state's taxpayers, not CTSI. *See id.*

¶ 45 Accordingly, we conclude, as did the district court, that CTSI is a public corporation under the test enunciated in *Public Employees* and in light of *Robinson* and *Moran*. Because CTSI is "public," it is "governmental" in nature, and because it is undisputed that CTSI "serv[es] as an intermediary" to the Pool, *see Robinson*, 155 P.3d at 413, we

---

1. The undisputed evidence in the record also establishes that the Public Employees Retirement Association of Colorado (PERA) has determined that CTSI is "a governmental entity consistent with the requirements of the law governing Colorado PERA and therefore eligible to be an affiliated employer," and that the Internal Revenue

Service has also ruled that CTSI is an instrumentality of the state and various counties and pools that created CTSI, and that CTSI is, therefore, exempt from federal income tax. Although not dispositive, we find this evidence, albeit in other contexts, informative in our analysis of CTSI's status as a public entity under the CGIA.

similarly conclude, as did the district court, that CTSI is an "instrumentality" of the Pool and, thus, a "public entity" under the CGIA.

¶ 46 Alternatively, we conclude that, based on the undisputed evidence discussed above, CTSI is also a public entity under section 24–10–103(5) because, like the Pool, it is also a separate entity created by intergovernmental cooperation between or among other public entities. *See Griffin v. Capital Securities of America, Inc.*, — P.3d —, —, 2010 WL 4361378 (Colo.App.2010) (*cert. granted* 2011 WL 882639 (Mar. 14, 2011)) (appellate court can affirm a correct result on any ground supported by the record). As noted, the documents submitted with the C.R.C.P. 12(b)(1) motion to dismiss make clear that CTSI was created and formed by various counties as a separate nonprofit corporation to operate exclusively for the purpose of lessening the burden on those county governments and self-insurance pools, including the Pool here. Accordingly, CTSI fits squarely within the statutory definition of "public entity," as a separate entity created by intergovernmental cooperation between or among other public entities.

¶ 47 In sum, we discern no error in the district court's conclusion that both the Pool and CTSI are entitled to immunity under the CGIA and public entities.

### D. Notice

¶ 48 In their principal briefs on appeal, all parties present arguments relating to whether the Lyonses' purported notice to the Pool and CTSI was adequate under the CGIA. However, because we have concluded that the Lyonses' bad faith claim is a tort, and because we have concluded that the Pool and CTSI are public entities immune from liability, we need not address whether the Lyonses provided adequate notice pursuant to section 24–10–109, C.R.S.2011.[2] *See State v. Zahourek*, 935 P.2d 74, 78 (Colo.App.1996) ("Because we have concluded that defendants' counterclaims were barred by the GIA, we need not address whether defendants gave timely notice of their claims...."), *aff'd sub*

nom. *Graham v. State*, 956 P.2d 556 (Colo. 1998); *see also Jordan*, 876 P.2d at 41.

### III. Discovery

¶ 49 The Lyonses next contend that the district court abused its discretion by implicitly rejecting their request to conduct discovery on whether the Pool and CTSI waived their immunity pursuant to section 24–10–104, C.R.S.2011. We are not persuaded.

¶ 50 Under section 24–10–104, "the governing body of a public entity, by resolution, may waive the immunity granted in section 24–10–106 for the types of injuries described in the resolution." The type of resolution contemplated by this section is a formal legislative action approved by a majority of the public entity's governing body. *Pierson v. Black Canyon Aggregates, Inc.*, 32 P.3d 567, 570 (Colo.App.2000), *rev'd on other grounds*, 48 P.3d 1215 (Colo.2002).

¶ 51 If a public entity raises the issue of sovereign immunity before or after commencement of discovery, "the court shall suspend discovery, except any discovery necessary to decide the issue of sovereign immunity." § 24–10–108, C.R.S.2011.

¶ 52 Generally, pretrial discovery matters are within the district court's discretion. *Wenz v. Nat'l Westminster Bank, PLC*, 91 P.3d 467, 469 (Colo.App.2004) (citing *Leaffer v. Zarlengo*, 44 P.3d 1072 (Colo. 2002)). The district court's discretion includes rulings limiting discovery. *Id.* On appeal, we will not disturb a discovery ruling absent an abuse of discretion, which occurs only when the court's decision is manifestly arbitrary, unreasonable, or unfair. *Id.*

¶ 53 Here, after the Pool and CTSI filed their motion to dismiss, the Lyonses filed a motion to stay all proceedings in this case until the underlying lawsuit between the Lyonses and the banks was resolved. They also filed a substantive response in opposition to the Pool and CTSI's motion to dismiss. In their response to the motion to dismiss, the Lyonses requested that the district court

---

2. Indeed, in their reply brief, the Lyonses expressly concede that we should decline to address the notice issue as moot if we conclude that

their bad faith claim is a tort claim within the purview of the CGIA and that CTSI is a public entity.

permit them to conduct discovery on whether the Pool or CTSI waived their immunity by resolution under section 24–10–104, while, at the same time, they argued that the court should suspend any such discovery until the court ruled on their motion to stay. In its written order, the district court simultaneously granted the Pool and CTSI's motion to dismiss and denied the Lyonses' motion to stay. On appeal, the Lyonses argue that the district court abused its discretion "by refusing the Lyons[es] the opportunity to discover whether the Pool and/or CTSI had waived immunity."

¶ 54 Initially, we fail to see how any of the district court's actions precluded the Lyonses from conducting discovery on the waiver of immunity issue. The Pool and CTSI expressly raised the issue of immunity under the CGIA in January 2010 in their answer to the Lyonses' bad faith claim, and the Lyonses were free to conduct any discovery on immunity issues, including waiver under section 24–10–104, from that point on. Indeed, in its order granting the Pool and CTSI's motion to stay, the court expressly excepted from the stay any proceedings as to the immunity issue. By their own admission, the Lyonses chose not to conduct discovery on the immunity issue because of a perceived need to maintain consistency between their positions in this case and the underlying lawsuit. But that was their choice. We discern no reason why merely conducting discovery on the immunity issue—as they were already permitted to do—would prejudice the Lyonses on the merits of the Pool's declaratory judgment claims or the banks' claims in the underlying lawsuit.

¶ 55 More importantly, the record here contains undisputed evidence showing that neither the Pool nor CTSI waived its immunity pursuant to section 24–10–104. According to an affidavit submitted by the Pool and CTSI's general counsel, "[t]here has been no resolution adopted by either CTSI or the Pool waiving immunity pursuant to C.R.S. § 24–10–104." The Lyonses chose not to conduct any discovery challenging this affidavit, and nothing in the record even remotely suggests that the Pool or CTSI waived its immunity pursuant to section 24–10–104.

¶ 56 Therefore, we reject the Lyonses' contention that the district court abused its discretion by refusing the Lyonses the opportunity to conduct discovery on whether the Pool and CTSI had waived immunity under the CGIA.

## IV. Attorney Fees

¶ 57 Finally, the Pool and CTSI request that we award them attorney fees under section 13–17–201, C.R.S.2011, for defending against the Lyonses' bad faith claim on appeal. We grant the request as to CTSI and deny the request as to the Pool.

¶ 58 A motion to dismiss for lack of subject matter jurisdiction is governed by C.R.C.P. 12(b)(1). A district court may consider competent evidence pertaining to the motion without converting the 12(b)(1) motion into a motion for summary judgment under C.R.C.P. 56. *Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 924 (Colo.1993).

¶ 59 Section 13–17–201 creates a mandatory right to attorney fees when a plaintiff's tort action is dismissed prior to trial under C.R.C.P. 12(b):

> In all actions brought as a result of a death or an injury to person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action.

¶ 60 By its plain language, section 13–17–201 applies to a motion to dismiss under C.R.C.P. 12(b)(1) for lack of subject matter jurisdiction under the CGIA. *Smith v. Town of Snowmass Vill.*, 919 P.2d 868, 873 (Colo.App.1996). Moreover, the statute, by using the term "defendant" in the singular, necessarily applies to each defendant who has an action against it dismissed pursuant to C.R.C.P. 12(b)(1). *Id.* Accordingly, the statute may apply to one defendant even though claims are still pending as to other defendants at the time of dismissal. *Stauffer v. Stegemann*, 165 P.3d 713, 718 (Colo.App.

2006). However, the statute does not authorize recovery if a defendant obtains dismissal of some, but not all, of a plaintiff's tort claims. *Sotelo v. Hutchens Trucking Co.,* 166 P.3d 285, 287 (Colo.App.2007).

¶ 61 Here, in their answer, counterclaim, and third-party complaint, the Lyonses alleged one claim against CTSI—bad faith breach of insurance contract—and two claims against the Pool—breach of contract and bad faith breach of insurance contract. As discussed above, the district court correctly concluded that the CGIA applied to the Lyonses' bad faith breach of insurance contract claim and that CTSI and the Pool were both public entities and, therefore, immune under the CGIA as to that claim.

¶ 62 Accordingly, CTSI is entitled to its attorney fees on appeal because the only claim asserted against it was dismissed before trial under C.R.C.P. 12(b)(1). *See Stauffer,* 165 P.3d at 718; *Smith,* 919 P.2d at 873. The Pool, however, is not entitled to attorney fees on appeal because the Lyonses' breach of contract claim is stayed in the district court and has not been dismissed. *See Sotelo,* 166 P.3d at 287.

¶ 63 Because the district court is in a better position to determine the reasonable attorney fees incurred by CTSI in this appeal, we remand the case for further proceedings on that issue. *See* C.A.R. 39.5; *Stauffer,* 165 P.3d at 719.

The district court's order is affirmed, and the case is remanded for further proceedings consistent with this opinion.

Judge BERNARD and Judge LICHTENSTEIN concur.