Opinion by JUDGE ASHBY
¶ 1 Defendant, Regional Transportation District (RTD), appeals from the trial court's denial of its C.R.C.P. 12(b)(1) motion to dismiss the case for lack of subject matter jurisdiction. We affirm in part, reverse in part, and remand the case for further proceedings.
*783 I. Background
¶ 2 Plaintiff, Kelly A. Trujillo, filed a complaint alleging that she was injured while attempting to catch a shuttle bus at the Mall Bus Turnaround located at Civic Center Station in downtown Denver. She claims that she stepped on a tree grate that was not properly secured, thereby causing her to fall.
¶ 3 RTD filed a C.R.C.P. 12(b)(1) motion to dismiss based on its assertion of governmental immunity pursuant to the Colorado Governmental Immunity Act (CGIA), specifically sections 24-10-103(6) and - 106(1)(d)(I), C.R.S. 2018. After receiving briefing on the motion from both sides, the court denied the request for a hearing and the motion. RTD filed this interlocutory appeal.
II. Discussion
¶ 4 RTD contends that the trial court erred in denying its C.R.C.P. 12(b)(1) motion by finding that the walkway on which Trujillo was allegedly injured met the statutory definition of a sidewalk, thereby waiving RTD's entitlement to governmental immunity. Specifically, RTD asserts here, as it did to the trial court, that the Turnaround is not a public roadway because only RTD buses are allowed to drive there.[1] We disagree.
¶ 5 "Governmental immunity implicates issues of subject matter jurisdiction, which are determined in accordance with C.R.C.P. 12(b)(1)." Daniel v. City of Colorado Springs , 2014 CO 34, ¶ 10, 327 P.3d 891. Thus, we apply a mixed standard of review to the trial court's decision to deny RTD's motion to dismiss for lack of subject matter jurisdiction. See Medina v. State , 35 P.3d 443, 452 (Colo. 2001). We review the court's factual findings for clear error. See Corsentino v. Cordova , 4 P.3d 1082, 1087 (Colo. 2000). And we review the court's legal conclusions de novo. Medina , 35 P.3d at 452. Further, "[b]ecause governmental immunity established by the CGIA derogates Colorado's common law, we strictly construe the Act's immunity provisions, and as a logical corollary, we broadly construe its waiver provisions." Young v. Brighton Sch. Dist. 27J , 2014 CO 32, ¶ 13, 325 P.3d 571.
¶ 6 This case requires us to interpret one of the CGIA's waiver provisions. In interpreting statutes, our primary goal is to discern and apply the legislative intent. Daniel , ¶ 11 ; McKinley v. City of Glenwood Springs , 2015 COA 126, ¶ 5, 361 P.3d 1080. We do this by first looking to the statute's plain language. McKinley , ¶ 5. If it is clear and unambiguous, we apply it as written. Daniel , ¶ 12. If, however, it is susceptible of more than one reasonable interpretation, we may look to extrinsic sources to aid our interpretation. Id.
¶ 7 The CGIA serves as a shield against tort liability for public entities. Id. at ¶ 13 ; see § 24-10-106(1), C.R.S. 2018. There are a few situations, however, in which the statute waives immunity. As relevant here, section 24-10-106(1)(d)(I) waives immunity for "[a] dangerous condition of a public highway, road, or street which physically interferes with the movement of traffic ... of any public highway, road, street, or sidewalk within the corporate limits of any municipality ...."
¶ 8 It is undisputed that RTD is a public entity. It is also undisputed that the area of the alleged accident is a pedestrian walkway and that the tree grate is part of that walkway.
¶ 9 The key question is whether that walkway is a "sidewalk." The CGIA defines a sidewalk as "that portion of a public roadway between the curb lines or the lateral lines of the traveled portion and the adjacent property lines which is constructed, designed, maintained, and intended for the use of pedestrians." § 24-10-103(6), C.R.S. 2018.
*784 ¶ 10 In denying RTD's motion, the trial court found that the Mall Bus Turnaround is a "public roadway" as that term is used in the CGIA. It focused its analysis on "the purpose the road serves and who is benefitted by its use, and not the restrictions placed upon it." The court noted that RTD's limitation on what vehicles are allowed to drive in the Turnaround - only public transportation vehicles - merely permits "vehicular transportation by the general public in a specific manner." That limitation does not "completely disallow public travel on the Mall Bus Turnaround, rather, the limitation simply imposes restrictions on the mode of public travel permitted on the Mall Bus Turnaround." Having concluded that the Turnaround was a public roadway, the court then concluded that the area where the tree grate was located was a sidewalk and, therefore, RTD was subject to the waiver provision of section 24-10-106(1)(d)(I).
¶ 11 On appeal, as in the trial court, RTD asserts that the Turnaround is not a public roadway because only RTD buses are allowed to drive there. The general public is not permitted to drive in the Turnaround. In support of this argument, RTD cites to Stanley v. Adams County School District 27J , 942 P.2d 1322 (Colo. App. 1997).
¶ 12 In Stanley , the plaintiff was injured while delivering pizzas to a public high school. He slipped and was injured on some gravel and mud on a driveway that serviced the cafeteria and provided parking to service vehicles. The plaintiff argued that the driveway was a public road under section 24-10-106(1)(d)(I). The division rejected this argument, finding that the driveway "solely benefits the property on which it is located and does not provide a means by which a person may access another property or road as might be the case with a typical public highway, road, or street." Id. at 1325.
¶ 13 The division also rejected the argument that the driveway was a sidewalk because it found that the driveway was perpendicular to the street. Id. However, this limited view of a sidewalk - that it must be parallel to the public road - has been rejected by subsequent divisions. See Colucci v. Vail , 232 P.3d 218, 221 (Colo. App. 2009) ("[T]he dispositive factor is whether the pathway crosses an adjacent property line, and not whether it is parallel or perpendicular to it.").
¶ 14 Unlike the driveway in Stanley , the Mall Bus Turnaround is designed for public use. In fact that space is specifically designed to serve the general public, although they do not do so while driving in their private vehicles. We find the cases that have held that airport runways are public roads to be more helpful in considering the nature of the roadway here. See., e.g. , Hale v. Sullivan , 146 Colo. 512, 362 P.2d 402 (1961). These cases, by considering the manner in which the property being considered is used, have found that because airports are a necessary link in the transportation system, their runways and landing strips are public roadways. See id. at 516-18, 362 P.2d at 404-05 ; see also Simon v. Pettit , 687 P.2d 1299, 1302 (Colo. 1984).
¶ 15 Similarly, the Mall Bus Turnaround serves the general public and is a necessary link in Denver's transportation system; thus, even though the types of vehicles permitted to drive on that road are limited, we conclude that the Turnaround is a public roadway as that term is used in the CGIA. See Daniel , ¶ 15 (holding that a municipal golf course parking lot "was 'public' because it was accessible to and beneficial to the general public"); cf. Colucci , 232 P.3d at 220 (courts should not use statutory definitions from other statutes, taken out of context, to interpret a given statute but instead may rely on analogous facts from other cases interpreting undefined terms).
¶ 16 However, the limit of the public roadway determines only one side of the sidewalk. The other side is determined by the property lines. See § 24-10-103(6) ; Colucci , 232 P.3d at 221. From the record before us, we cannot discern where the property lines are.
¶ 17 Thus, we remand the case to the trial court for a hearing to determine where the property lines are, where the boundary of the sidewalk is, and whether this incident occurred within that boundary. In reaching this determination, the court should also consider *785 RTD's argument, which was raised in its Rule 12(b)(1) motion but not addressed in the trial court's order, that, because the Turnaround and walkway were all part of RTD's property, there is no space between the public road and the property lines within which a "sidewalk" could exist.
III. Conclusion
¶ 18 We affirm that part of the trial court's order finding that the Mall Bus Turnaround is a public roadway, but we reverse that part of the order denying RTD's request for a hearing and remand the case for further proceedings. To the extent the court can make sufficient findings regarding the existence and scope of a sidewalk on the record before it, it may do so; however, we leave it to the trial court's discretion to determine if it requires additional evidence and, if so, the extent and form that evidence may take and whether or not a hearing is required.
JUDGE DAILEY and JUDGE LICHTENSTEIN concur.

RTD's contention has expanded and changed over the course of these proceedings. As best we can discern, this is the specific ground RTD argued to the trial court and that it raised in its opening brief in this interlocutory appeal. In its reply brief and then during oral arguments, RTD seemed to raise the issue that the walkway could not be a sidewalk because it was not next to a federal, state, or municipal roadway since RTD is a political subdivision and fully owns the Turnaround and walkway. However, this issue is not properly before us, and we decline to address it. See In Interest of L.B. , 2017 COA 5, ¶ 48, 413 P.3d 176 ("We do not consider arguments raised for the first time in a reply brief.").