24CA1972 Coronado-Arrascue v Golka 11-26-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1972
El Paso County District Court No. 24CV30702
Honorable David Prince, Judge

Monsignor Ricardo Coronado-Arrascue,

Plaintiff-Appellant,

v.

Bishop James R. Golka and Monsignor Robert E. Jaeger, Vicar General,

Defendants-Appellees.

ORDER AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE FREYRE
Pawar and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 26, 2025

J. O'Keefe Law, PLLC, Joseph A. O'Keefe, Colorado Springs, Colorado, for
Plaintiff-Appellant

Taft Stettinius & Hollister, Richard F. Bednarski, John T. Melcon, Colorado
Springs, Colorado, for Defendants-Appellees

¶ 1     Plaintiff, Monsignor Ricardo Coronado-Arrascue, appeals the district court's order awarding attorney fees and costs to defendants, Bishop James R. Golka and Monsignor Robert E. Jaeger (collectively Defendants). We affirm the order and remand for a determination of Defendants' reasonable appellate attorney fees.

## I.     Background

¶ 2     In 2020, Coronado-Arrascue began serving as the Judicial Vicar and Chancellor of the Diocese of Colorado Springs (Diocese). Golka and Jaeger served as Bishop and Vicar General of the Diocese, respectively.

¶ 3     In 2022, Coronado-Arrascue resigned from his positions at the Diocese as part of an agreement with the Diocese (Settlement Agreement). The Settlement Agreement provided that Coronado-Arrascue would remain a priest in good standing with the Diocese and would be permitted to perform public masses if and when he returned to the Colorado Springs area.

¶ 4     About eighteen months later, Jaeger issued a "Precept" on the Diocese's behalf suspending Coronado-Arrascue's authority to act, or present himself, as a priest within the Diocese due to a "serious

1

allegation" lodged against him. The announcement letter accompanying the Precept stated that Coronado-Arrascue was "no longer considered a priest in good standing with the Diocese" and was "to refrain from the public celebration of the sacraments whenever he is within the territory of th[e] Diocese."

¶ 5    In November 2023, Coronado-Arrascue sued the Diocese (El Paso County Case No. 23CV32252), claiming breach of contract, libel, intentional interference with contractual obligations, and extreme and outrageous conduct. The district court dismissed the case under C.R.C.P. 12(b)(5), determining that the church autonomy doctrine, based on the Free Exercise Clause of the First Amendment, barred the causes of action asserted in Coronado-Arrascue's complaint. Coronado-Arrascue did not appeal the court's order.

¶ 6    Then in 2024, Coronado-Arrascue filed another suit against Defendants, asserting fraudulent inducement and civil conspiracy. Defendants filed a C.R.C.P. 12(b)(5) motion to dismiss Coronado-Arrascue's complaint, which the district court granted for

failure to meet C.R.C.P. 9(b)'s particularity requirement.[1] Coronado-Arrascue appealed the district court's order.  In an unpublished opinion, a division of this court affirmed the district court's order, finding Coronado-Arrascue's argument "skeletal and conclusory."[2]  *Coronado-Arrascue v. Golka,* slip op. at ¶¶ 17-18 (Colo. App. No. 24CA1542, June 5, 2025) (not published pursuant to C.A.R. 35(e)).

¶ 7      While the prior appeal was pending, Defendants moved for their reasonable attorney fees and costs under sections 13-17-201 and 13-17-102, C.R.S. 2025, as well as other theories.  In his response, Coronado-Arrascue argued that his claims were not tort claims but, instead, related to the "entry into and enforcement or nonenforcement of the contract."

¶ 8      The district court granted Defendants' motion, finding that they were entitled to attorney fees under section 13-17-201 because fraudulent inducement and civil conspiracy claims sounded in tort.

---

[1] While the district court also analyzed claim and issue preclusion, the district court dismissed Coronado-Arrascue's complaint based on C.R.C.P. 9(b) alone.

[2] We can take judicial notice of the contents of court records in a related proceeding.  *People v. Sa'ra,* 117 P.3d 51, 56 (Colo. App. 2004).

In rejecting Coronado-Arrascue's argument that his claims did not fit the definition of "tort" as used in the statute, the district court found:

> [Coronado-Arrascue] appears to accept that fraudulent inducement and a derivative conspiracy claim can be considered "torts" in some circumstances such as analysis under the economic loss rule as in *McWhinney*. However, [Coronado-Arrascue] argues, a different definition of "tort" should be adopted when the cited statute is applied. [Coronado-Arrascue] cites no legal authorities in support of this premise and provides no meaningful analysis based on legal principles in support either.

¶ 9    On appeal, Coronado-Arrascue contends that the district court erred by awarding Defendants attorney fees under sections 13-17-201, 13-17-102, and 13-17-103, C.R.S. 2025. Specifically, he claims the court "improperly applied" the statutes. Because we conclude that the district court properly awarded Defendants their attorney fees under section 13-17-201, we need not address Coronado-Arrascue's remaining contentions.

## II. Section 13-17-201

¶ 10    Coronado-Arrascue contends that the district court improperly awarded Defendants attorney fees under section 13-17-201. We disagree.

### A. Standard of Review and Applicable Law

¶ 11    We review de novo whether a statute such as section 13-17-201 mandates an award of attorney fees. *Schulz v. Laszlo & Assocs., LLC*, 2025 COA 24, ¶ 27. When interpreting a statute, our primary goal is to discern and give effect to the General Assembly's intent. *Hassler v. Acct. Brokers of Larimer Cnty., Inc.*, 2012 CO 24, ¶15; *L & R Exploration Venture v. Grynberg*, 271 P.3d 530, 533 (Colo. App. 2011). We look first to the statutory language, giving the words and phrases used therein their plain and ordinary meanings. *Hassler*, ¶ 15.

¶ 12    Section 13-17-201(1) states that, "[i]n all actions brought as a result of . . . an injury to person . . . occasioned by the tort of any other persons," a defendant "shall have judgment for his reasonable attorney fees in defending the action," if the action is dismissed on any ground pursuant to a defendant's C.R.C.P. 12(b) motion. An award of fees under the statute is mandatory. *Colo. Special Dists.*

*Prop. & Liab. Pool v. Lyons*, 2012 COA 18, ¶ 59. In determining whether section 13-17-201 applies, the district court should focus on the manner in which the claims are pleaded. *Castro v. Lintz*, 2014 COA 91, ¶ 16.

## B. Analysis

¶ 13 Coronado-Arrascue asserts that the district court erred when it awarded Defendants attorney fees under section 13-17-201 because (1) section 13-17-201 does not "categorically extend to all claims because they are pled as torts" but instead applies to "actions which fit a more classical definition of tort," and (2) fraudulent inducement and civil conspiracy are not properly characterized as "traditional torts" because they are rooted in contractual disputes. We are unpersuaded for three reasons.

¶ 14 First, section 13-17-201 mandates an award of attorney fees to a defendant who successfully moves to dismiss "*all actions* brought as a result of . . . an injury to [a] person . . . occasioned by the tort of any other persons." (Emphasis added.) While Coronado-Arrascue argues that the statute does not apply to all claims just because they are pled as torts and only applies to a "more classical definition of tort," he does not provide any authority,

nor did we identify any, supporting this assertion. Moreover, the plain language of the statute mandates an award of fees for "all actions." We are not at liberty to read additional terms into, or to modify, the plain language of a statute. *See Nat'l Farmers Union Prop. & Cas. Co. v. Est. of Mosher*, 22 P.3d 531, 534 (Colo. App. 2000).

¶ 15    Second, claims for fraudulent inducement and civil conspiracy sound in tort. *McWhinney Centerra Lifestyle Ctr. LLC v. Poag & McEwen Lifestyle Ctrs.-Centerra LLC*, 2021 COA 2, ¶ 75 (characterizing fraudulent inducement claims as tort claims); *Ingold v. AIMCO/Bluffs, L.L.C. Apartments*, 159 P.3d 116, 122 (Colo. 2007) (characterizing civil conspiracy claim as a tort claim).

¶ 16    Third, in determining whether section 13-17-201 applies, the controlling issue is how the plaintiff has characterized the claim in the complaint. *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1010 (Colo. 2008). Here, Coronado-Arrascue framed his claims as tort claims. Both his fraudulent inducement and civil conspiracy claims were based on alleged misrepresentations made *prior* to the execution of the contract. In his complaint, Coronado-Arrascue asserted:

- Defendants, through their direct and personal involvement in negotiating, agreeing to, and executing the Settlement Agreement, represented to Coronado-Arrascue that he would remain in good standing with the Diocese, that the Diocese would refrain from making any disparaging or defamatory statements about Coronado-Arrascue, and that any violations of or disputes concerning the terms of the Settlement Agreement would be subject to Colorado law and actionable in Colorado courts.

- "[Defendants] made such representations with the intent of inducing [Coronado-Arrascue] to sign the Settlement Agreement in reliance on said representations."

- "Based upon information and belief, [Defendants] agreed, by words and/or conduct to induce [Coronado-Arrascue] to sign the Settlement Agreement through unlawful means including false representations and fraudulent inducement."

- "As a result of these unlawful acts of fraudulent inducement by [Defendants], [Coronado-Arrascue]

8

entered into the Settlement Agreement, ignorant of the fact that the Diocese had no intention of abiding by its terms or permitting it to be subject to Colorado Law."

¶ 17  Thus, while Coronado-Arrascue's claims are related to a contract, they implicate an independent, pre-contractual tort duty. *See Van Rees v. Unleaded Software, Inc.*, 2016 CO 51, ¶ 19 (where a person wrongfully induces another to enter a contract knowing it would not be performed, a tort duty that exists independently of the contract is violated); *cf. Sweeney v. United Artists Theater Cir., Inc.*, 119 P.3d 538, 541 (Colo. App. 2005) (where a plaintiff's claim is framed as a contract claim, section 13-17-201 is inapplicable).

¶ 18  To the extent that Coronado-Arrascue argues that the district court applied the church autonomy doctrine to this case and awarded Defendants a "broad grant of immunity," we disagree. Our review of the record shows that the district court found that Coronado-Arrascue failed to plead his claim of fraud with particularity as required by C.R.C.P. 9(b) in dismissing Coronado-Arrascue's claims. And that ruling was affirmed in the prior appeal.

¶ 19    Accordingly, we conclude that the district court properly awarded Defendants attorney fees and costs under section 13-17-201.

## III.    Appellate Attorney Fees

¶ 20    Defendants request appellate attorney fees.  "A party who successfully defends . . . a dismissal order [subject to section 13-17-201] is also entitled to recover reasonable attorney fees incurred on appeal."  *Wark v. Bd. of Cnty. Comm'rs*, 47 P.3d 711, 717 (Colo. App. 2002).

¶ 21    We exercise our discretion under C.A.R. 39.1 to remand the case to the district court to determine and award reasonable appellate attorney fees and costs incurred by Defendants in litigating this appeal.  *See Payan v. Nash Finch Co.*, 2012 COA 135M, ¶ 63.

## IV.    Disposition

¶ 22    The order is affirmed, and the case is remanded to the district court to determine Defendants' reasonable appellate attorney fees and costs.

JUDGE PAWAR and JUDGE YUN concur.