Lavonne ROBINSON, f/k/a Lavonne Bazemore, individually and as representative of a class, Plaintiff–Appellant,

v.

COLORADO STATE LOTTERY DIVISION, an agency of the State of Colorado; Colorado State Lottery Commission, an agency of the State of Colorado; and Texaco, Inc., a Texas corporation, Defendants–Appellees.

No. 04CA1785.

Colorado Court of Appeals, Div. I.

May 4, 2006.

Certiorari Granted April 9, 2007.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2005.

The Carey Law Firm, Robert E. Carey, Leif Garrison, Colorado Springs, Colorado, for Plaintiff–Appellant.

John W. Suthers, Attorney General, Danielle Moore, Assistant Attorney General, Denver, Colorado, for Defendants–Appellees Colorado State Lottery Division and Colorado State Lottery Commission.

Holland & Hart, LLP, Todd W. Miller, Greenwood Village, Colorado, for Defendant–Appellee Texaco, Inc.

HUME *, J.

Plaintiff, Lavonne Robinson, appeals the judgment in favor of defendants, the Colora-

---

* Sitting by assignment of the Chief Justice under    provisions of Colo. Const. art. VI, § 5(3), and

do State Lottery Division, the Colorado State Lottery Commission, and Texaco, Inc. Plaintiff also appeals the trial court's order awarding attorney fees and certain costs to defendants. We affirm in part, reverse in part, and remand with directions.

The Lottery Division is part of the Colorado Department of Revenue and is authorized to establish, operate, and supervise certain lottery games and to license retailers to sell its products to the general public. The Lottery Commission is part of the Lottery Division and is responsible for promulgating rules and regulations governing the operation of the lottery, including the rules governing the number and size of prizes for the winning tickets. (We will refer collectively to these two entities as the Lottery.)

Texaco is a Texas corporation authorized to do business in Colorado. Texaco has been granted a license by the Lottery to sell instant scratch game tickets directly to the public. Although both Texaco and plaintiff are listed in the complaint as members of a class, no class has been certified by the trial court.

In her complaint, plaintiff alleged that the Lottery and Texaco continued to sell, for a period of a few weeks to several months, instant scratch game tickets after all represented and advertised prizes were awarded or claimed. Plaintiff also alleged that defendants were aware that the represented and advertised prizes were not available and that the Lottery understood that retailers continued to sell these tickets and condoned and authorized such sales. Plaintiff further alleged that for at least five years, she had purchased various instant scratch game tickets with the expectation that she could win the represented and advertised prizes. Consequently, plaintiff claimed that she, as a purchaser of a scratch game ticket, was denied the benefit of her bargain.

Plaintiff alleged, for example, that she had purchased "Luck of the Zodiac" scratch game lottery tickets at a Texaco store, which is a licensed retailer, on July 24, 1998. The "Luck of the Zodiac" game offered a $10,000 grand prize. However, the lottery had

§ 24–51–1105, C.R.S.2005.

awarded the final grand prize for the "Luck of the Zodiac" scratch game lottery ticket 72 days earlier, on May 13, 1998.

Plaintiff alleged seven claims against defendants: (1) breach of express contract; (2) breach of express warranty under the Colorado Uniform Commercial Code (UCC); (3) breach of implied warranty under the UCC; (4) breach of the implied covenant of good faith and fair dealing; (5) violation of § 24–35–206, C.R.S.2005; (6) violation of the Colorado Consumer Protection Act (CCPA); and (7) restitution and unjust enrichment. Plaintiff asserted that all her claims against defendants were either contractual, statutory in nature, or equitable claims arising out of a contractual relationship.

The Lottery and Texaco filed separate motions to dismiss plaintiff's complaint pursuant to C.R.C.P. 12(b)(1) and (5) asserting, among other things, that plaintiff had failed to exhaust administrative remedies and that her claims were barred by the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S.2005.

The trial court granted defendants' motions based on the failure to exhaust administrative remedies. Plaintiff appealed, and a division of this court held that adequate remedies were not available, and thus, plaintiff could not have exhausted her administrative remedies before filing suit. *See Bazemore v. Colo. State Lottery Div.*, 64 P.3d 876 (Colo. App.2002). The division remanded the case to the trial court for further proceedings on the issue of governmental immunity.

On remand, the parties briefed the issue of governmental immunity, and the trial court held an evidentiary hearing. The trial court found that Texaco was a public entity for purposes of the GIA and that plaintiff's claims were all in the nature of tort claims for which defendants' immunity under the GIA had not been waived. Accordingly, the trial court dismissed plaintiff's complaint.

The Lottery then sought its attorney fees pursuant to § 13–17–201, C.R.S.2005. The trial court concluded that the Lottery was entitled to $52,514 in attorney fees.

## I. GIA

Plaintiff contends that the trial court erred in finding that her claims against defendants were barred by the GIA. In particular, plaintiff argues that her claims were based in contract, not tort, and that they were not subject to the GIA. We disagree.

Except in certain specified situations, sovereign immunity is a bar to any action against a public entity for injuries which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant. Section 24-10-108, C.R.S.2005.

The GIA is intended to apply when the claimant seeks redress from injuries that result from tortious conduct. *See Adams v. City of Westminster*, 140 P.3d 8 (Colo.App. 2005). Consequently, it has been interpreted as not applying to contract claims. *See State Pers. Bd. v. Lloyd*, 752 P.2d 559 (Colo.1988).

In determining whether a particular claim lies in tort or could lie in tort for purposes of the GIA, a court must consider the nature of the injury and the relief sought. *See City of Colorado Springs v. Conners*, 993 P.2d 1167 (Colo.2000). This determination must be made on a case-by-case basis. *Berg v. State Bd. of Agric.*, 919 P.2d 254 (Colo. 1996).

When a party has alleged a contract claim, the court should examine whether the claim and the duty allegedly breached arise from the terms of the contract itself or whether the claim could lie in tort. *See CAMAS Colo., Inc. v. Bd. of County Comm'rs*, 36 P.3d 135 (Colo.App.2001); *Morrison v. City of Aurora*, 745 P.2d 1042 (Colo. App.1987). If the claims are for breach of obligations that arose from the terms of a contract, the public entity is not immune. *See Adams v. City of Westminster, supra; Elliott v. Colo. Dep't of Corr.*, 865 P.2d 859 (Colo.App.1993).

Although most actions for purely economic loss injuries are based on breaches of contractual duties, some torts are expressly designed to remedy such loss. The supreme court has "recognized that certain common law claims that sound in tort and are expressly designed to remedy economic loss may exist independent of a breach of contract claim." *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1263 (Colo.2000).

It is well established that in some circumstances a claim of negligent misrepresentation based on principles of tort law, independent of any principle of contract law, may be available to a party to a contract. Consequently, a contracting party's negligent misrepresentation of material facts prior to the execution of an agreement may provide the basis for an independent tort claim asserted by a party who detrimentally relied on such negligent misrepresentations. *See Keller v. A.O. Smith Harvestore Prods., Inc.*, 819 P.2d 69 (Colo.1991); *see also W. Cities Broad., Inc. v. Schueller*, 849 P.2d 44 (Colo.1993)(a plaintiff who has been fraudulently induced to enter a contract may either rescind the contract or affirm the contract and recover in tort for the damages caused by the fraudulent act).

As pertinent here, the supreme court in *Keller v. A.O. Smith Harvestore Products, Inc., supra*, 819 P.2d at 73, specifically recognized that negligent misrepresentation is a tort claim based "not on principles of contractual obligation[,] but on principles of duty and reasonable conduct." *See Town of Alma v. AZCO Constr., Inc., supra*, 10 P.3d at 1263 (quoting *Keller*). As such, any claim brought by plaintiff that alleges negligent misrepresentation is based in tort and would be subject to the GIA.

The underlying factual basis for plaintiff's claims was that defendants sold instant scratch game tickets for several weeks to several months after all represented and advertised prizes were awarded or claimed. Plaintiff asserted that she bought tickets for at least five years with the expectation that she could win the advertised and represented prizes. The essence of plaintiff's claims was that defendants negligently misrepresented to her the possibility that she could win one of the advertised and represented prizes and thereby defendants fraudulently induced her to purchase scratch game tickets.

Although plaintiff argues that she was denied the benefit of her bargain and that her claims sound in contract, we conclude that

plaintiff's complaint attacks conduct occurring prior to her purchase of scratch game tickets. Therefore, her contract claims are based on her asserted reliance upon defendants' alleged negligent misrepresentation or fraudulent inducement and the injuries resulting from that reliance. Thus, her claims sound in tort for purposes of the GIA. *See Keller v. A.O. Smith Harvestore Prods., Inc., supra.* We reject the argument that in order for plaintiff's action to lie in tort, plaintiff must suffer physical or bodily injury. *See CAMAS Colo., Inc. v. Bd. of County Comm'rs, supra.*

Similarly, while plaintiff characterizes her claims for restitution and unjust enrichment as equitable claims that seek noncompensatory relief, these claims are based on the same alleged acts of misrepresentation. Therefore, we conclude that these claims also sound in tort for purposes of the GIA. *See Janis v. Cal. State Lottery Comm'n,* 68 Cal. App.4th 824, 80 Cal.Rptr.2d 549 (1998)(claims for rescission, restitution, and unjust enrichment to recover money lost by Keno players before Keno game was declared illegal were based on misrepresentations; thus, claims were based in tort, not contract, and governmental immunity statute shielded California State Lottery from liability).

Last, plaintiff asserted claims based on alleged violations of § 24–35–206, which governs licensing of lottery sales agents, and the CCPA. However, other than to note that she raised these claims in her complaint, plaintiff has not provided any argument regarding them in her appellate briefs. Thus, we will not separately address these claims. *See Westrac, Inc. v. Walker Field,* 812 P.2d 714 (Colo.App.1991)(it is the duty of counsel to inform the court both as to specific errors relied upon and as to the grounds, supporting facts, and authorities therefor); *People in Interest of D.B–J.,* 89 P.3d 530 (Colo.App. 2004)(court refused to address contention where party failed to identify any supporting facts, to make specific arguments, or to set forth specific authorities to support the contention).

We therefore conclude that the trial court did not err in determining that plaintiff's claims against the Lottery sounded in tort and were barred by the GIA.

## II.  Texaco

■   Plaintiff contends that the trial court erred in finding that Texaco was an "instrumentality" of the state and therefore constituted a "public entity" for purposes of the GIA. We agree.

In interpreting the GIA, we must give effect to the intent of the General Assembly. *State v. Nieto,* 993 P.2d 493 (Colo.2000). That intent is determined by examining the statute's plain language. *Podboy v. Fraternal Order of Police, Denver Sheriff Lodge 27,* 94 P.3d 1226 (Colo.App.2004). Additionally, we look at the context in which a statutory term appears, and the meaning of a word may be ascertained by reference to the meaning of words associated with it. *Jilot v. State,* 944 P.2d 566 (Colo.App.1996).

The term "public entity" is defined in the GIA as follows:

> "Public entity" means the state, county, city and county, municipality, school district, special improvement district, and every other kind of district, agency, instrumentality, or political subdivision thereof organized pursuant to law and any separate entity created by intergovernmental contract or cooperation only between or among the state, county, city and county, municipality, school district, special improvement district, and every other kind of district, agency, instrumentality, or political subdivision thereof.

Section 24–10–103(5), C.R.S.2005.

The term "instrumentality" is commonly defined as "the quality or state of being instrumental: a condition of serving as an intermediary." *Webster's Third New International Dictionary* 1192 (1986).

Texaco argues that it is an instrumentality of the state because it is a licensed sales agent for the Lottery. Conversely, plaintiff argues that Texaco, as a private corporation, does not qualify as an instrumentality of the state that is entitled to immunity as a public entity. We are persuaded by plaintiff's argument.

A central legislative purpose of the GIA is to limit the potential liability of public entities for compensatory money damages in tort. *See* § 24–10–102, C.R.S.2005. Unlimited liability places a burden upon taxpayers and could disrupt or make prohibitively expensive the provision of essential public services and functions. *See City of Colorado Springs v. Conners, supra.*

Extending immunity to Texaco would not further the General Assembly's intent in the GIA to limit the burden on state taxpayers. Any liability imposed on Texaco would be paid by Texaco, not the state.

Additionally, we note that the term "instrumentality" must be construed in the context in which it appears in the statute. *See Jilot v. State, supra.* By placing the term "instrumentality" in the context of other entities that are public in nature—"state, county, city and county, municipality, school district, [and] special improvement district"—the General Assembly has expressed an intent to restrict the definition of that term only to those entities that are governmental in nature. There is no indication that the General Assembly intended to expand the scope of the GIA to include any private person or corporation that entered into some type of agreement with a public entity. *See State v. Hartsough,* 790 P.2d 836 (Colo.1990)(noting that the term "public hospital" was grouped together with correctional facilities and jails, strongly suggesting that the section was intended to apply to public facilities designed to hold people and did not encompass veterinary hospitals); *Jilot v. State, supra* (court noted that the GIA places public facilities in discrete groups for the purpose of waiving immunity for similar public entities in a similar manner); *Pack v. Ark. Valley Corr. Facility,* 894 P.2d 34 (Colo.App.1995)(noting that correctional facilities are grouped in the GIA together with public hospitals and jails and their common denominator appears to be that each of these types of facilities is designed to house persons for continuous periods); *see also Springer v. City & County of Denver,* 13 P.3d 794 (Colo.2000)(a public entity does not have governmental immunity when it constructs a public building through the services of an independent contractor and a dangerous condition arises from that construction).

Therefore, we conclude that the trial court erred in determining that Texaco was a "public entity" and that it was entitled to immunity under the GIA. However, because the trial court did not address whether plaintiff had stated viable claims against Texaco, we remand the case for further proceedings on that issue.

### III.   Attorney Fees and Costs

▮ Plaintiff contends that the trial court erred in awarding attorney fees and costs to the Lottery. In particular, plaintiff argues that the Lottery failed to meet its burden of proof with regard to the hourly rate it used to value its attorneys' time, that some of the fees were awarded for attorneys' time devoted to superfluous arguments on which the Lottery did not prevail, that fees were improperly awarded for work performed by paralegals, and that the court improperly awarded certain costs for matters that were unnecessary to resolve the motion to dismiss. We are not persuaded.

Section 13–17–201 provides for an award of reasonable attorney fees in all actions brought as a result of a death or injury to person or property occasioned by the tort of any person, where any such action is dismissed on a C.R.C.P. 12(b) motion prior to trial. This section is applicable to a motion to dismiss under C.R.C.P. 12(b)(1) for lack of subject matter jurisdiction under the GIA. *See Smith v. Town of Snowmass Village,* 919 P.2d 868 (Colo.App.1996).

▮ An award of attorney fees must be reasonable. The determination of reasonableness is a question of fact for the trial court, and its ruling will not be disturbed on review unless clearly erroneous. *See Tallitsch v. Child Support Servs., Inc.,* 926 P.2d 143 (Colo.App.1996). Salaried and public interest attorneys should be awarded attorney fees based on the prevailing market rate. *See Balkind v. Telluride Mountain Title Co.,* 8 P.3d 581 (Colo.App.2000).

The record demonstrates that plaintiff filed this action in Denver District Court, that the Lottery filed a motion to change venue to Pueblo because the Lottery headquarters were located in Pueblo, and that

plaintiff did not object to the change of venue. In addition, the Lottery has been continuously represented by the Office of the Attorney General, which is located in Denver.

Attached to the Lottery's request for attorney fees and costs were affidavits submitted by the attorneys who had worked on the case. These affidavits set forth in detail the time spent by the attorneys on the litigation and the reasonable hourly rate for an attorney with the attorney's background and experience. Insofar as the litigation was commenced in Denver, and the Lottery continued to be represented by the same attorneys throughout the litigation, we conclude that these affidavits were sufficient to meet the Lottery's burden to establish a reasonable hourly rate for the work performed in the litigation. If plaintiff had believed that the rate set forth in these affidavits was not reasonable, she could have presented evidence to support her position. She did not do so here.

In addition, a review of the affidavits demonstrates that the attorneys excised any charges directly related to the Lottery's attempts to obtain dismissal as a result of plaintiff's asserted failure to exhaust her administrative remedies. Accordingly, although plaintiff objects to any charges that were incurred prior to the decision by a division of this court reversing the dismissal of plaintiff's complaint, the charges that remained appear to be related to the Lottery's preparation of the case and for discovery-related matters. In addition, the Lottery noted in its response that it had gone to great lengths to remove any time that was not related to seeking dismissal of the complaint under C.R.C.P. 12(b)(1).

Therefore, based on the record, we are unable to conclude that the trial court abused its discretion in failing to reduce the attorney fees award by these amounts. *See Tallitsch v. Child Support Servs., Inc., supra.*

To the extent plaintiff objects to the award of fees for work performed by paralegals, we note that a division of this court has specifically approved of such an award. *See Newport Pac. Capital Co. v. Waste,* 878 P.2d 136 (Colo.App.1994). Similarly, we note that the supreme court has also allowed for the recovery of time charged for paralegal services. *Am. Water Dev., Inc. v. City of Alamosa,* 874 P.2d 352 (Colo.1994). Thus, we conclude that the trial court did not err in allowing these charges.

Last, we reject plaintiff's contention that the trial court erred in awarding the Lottery any costs associated with a special master who was appointed to oversee discovery in the case. The record reveals that when the trial court appointed the special master, it ruled that the cost of the special master should be split equally between the parties. However, the court specifically reserved "ruling on the ultimate responsibility therefor[ ] at the conclusion of the case." Accordingly, we conclude that the trial court did not abuse its discretion in concluding that plaintiff should bear the full cost of the special master's appointment. *See* C.R.C.P. 53(a) (providing that the compensation of a special master may be charged upon such of the parties as the court may direct); *see also* §§ 13–16–107, 13–16–113, C.R.S.2005.

The judgment of dismissal is affirmed with regard to the Lottery and reversed with regard to Texaco, and the case is remanded for further proceedings regarding whether plaintiff has stated viable claims against Texaco. The order awarding attorney fees to the Lottery is affirmed.

Judge MÁRQUEZ and Judge DAILEY concur.