The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
June 20, 2019

**2019COA91**

**No. 18CA0534, *Martinez v. CSG Redevelopment* — Government
— Colorado Governmental Immunity Act — Immunity and
Partial Waiver — Public Entity — Instrumentality**

A division of the court of appeals addresses whether an entity

— CSG Redevelopment Partners, LLLP (CSGR) — is an

"instrumentality" of a public entity entitled to immunity under the

Colorado Governmental Immunity Act, §§ 24-10-103, -106, C.R.S.

2018.  In holding that it is, the division determines that, despite its

inclusion of a private entity and partial reliance on funding from a

private investor, CSGR's public purpose and the Denver Housing

Authority's extensive control over it renders it an instrumentality of

a public entity.  The division also addresses the limits of the waiver

of immunity for "[a] dangerous condition caused by an

accumulation of snow and ice which physically interferes with

public access on walks leading to a public building open for public business," § 24-10-106(1)(d)(III), and concludes that a low-income housing facility is not a "public building open for public business" because it is not generally accessible to members of the public.

COLORADO COURT OF APPEALS                                          **2019COA91**

Court of Appeals No. 18CA0534
City and County of Denver District Court No. 16CV31344
Honorable Jay S. Grant, Judge

Guadalupe P. Martinez,

Plaintiff-Appellant,

v.

CSG Redevelopment Partners LLLP, a Colorado limited liability limited
partnership,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE J. JONES
Terry and Grove, JJ., concur

Announced June 20, 2019

DiGiacomo, Jaggers & Perko, LLP, Douglas J. Perko, Arvada, Colorado, for
Plaintiff-Appellant

Harris, Karstaedt, Jamison & Powers, P.C., Susan M. Stamm, Englewood,
Colorado, for Defendant-Appellee

¶ 1    Guadalupe P. Martinez, a resident of the low-income housing facility Casa Loma Apartments, slipped and fell on a walkway leading to the apartment building.  Seeking to recover for his injuries, Mr. Martinez sued CSG Redevelopment Partners, LLLP (CSGR), Casa Loma's management company and the building's owner, under the Premises Liability Act, § 13-21-115, C.R.S. 2018, and (alternatively) for negligence, alleging that CSGR had allowed snow and ice to accumulate on the walkway.

¶ 2    CSGR moved to dismiss the complaint, arguing that, as an "instrumentality" of a public entity — the Denver Housing Authority (DHA) — it is immune from tort liability under the Colorado Governmental Immunity Act (CGIA), § 24-10-106, C.R.S. 2018.  It also argued that the exception to governmental immunity in section 24-10-106(1)(d)(III) for a dangerous condition on a walkway "leading to a public building open for public business" doesn't apply because Casa Loma isn't such a building.  Mr. Martinez opposed the motion. After a *Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo. 1993), hearing, the district court granted CSGR's motion, ruling that CSGR is an instrumentality of the DHA and that the public building exception doesn't apply.

1

¶ 3    We conclude that, because of both DHA's extensive control over CSGR and CSGR's public purpose, CSGR is an instrumentality of a public entity within the meaning of the CGIA, and therefore a public entity itself entitled to governmental immunity.  We also conclude that the record supports the district court's finding that Casa Loma isn't a public building open for public business, and that Mr. Martinez's alternative contention that immunity doesn't apply because the walkway is part of a "public facility located in [a] recreation area maintained by a public entity," *see* § 24-10-106(1)(e), is, on this record, unavailing.  The upshot is we affirm the district court's judgment.

## I.    Background

¶ 4    The following facts were found by the district court with record support or are otherwise undisputed.

¶ 5    In 1987, DHA created the Denver Housing Corporation (DHC), a nonprofit entity that DHA completely owns and controls.  For nearly thirty years, DHC (and, by extension, DHA), has owned and operated the Casa Loma Apartments.  In 2013, to finance the renovation of Casa Loma and two other low-income housing properties, DHA created CSGR and CSG Housing, Inc.  CSG

2

Housing served as CSGR's general partner, and another of DHA's instrumentalities, DHA Limited Partner, served as CSGR's limited partner. At that point, CSGR was made up of, and controlled entirely by, DHA instrumentalities.[1]

¶ 6    But in 2014, as part of CSGR's effort to secure more funding for the renovations, Wincopin Circle LLLP joined CSGR as a limited partner.[2] It functions mainly as an investor, having contributed approximately $12.5 million in equity financing. CSG Housing and DHA Limited Partner each contributed $90 and $10, respectively. As a result, CSG Housing, as the general partner, retained a 0.01% ownership interest in CSGR; DHA Limited Partner, a special limited partner, retained a 0.001% ownership interest in CSGR; and the investor, the limited partner, received a 99.989% ownership interest in CSGR and qualified for tax credits through the Low-Income Housing Tax Credit (LIHTC) program — a federal program that

---

[1] The parties stipulated that DHA is a public entity and that DHC and CSG Housing are instrumentalities of DHA within the meaning of the CGIA.

[2] American Express - West Equity Fund Limited Partnership later replaced Wincopin. For simplicity's sake, we'll refer to them collectively as "the investor."

offers federal tax credits to private investors as an incentive to invest in low-income housing projects. *See* 26 U.S.C. § 42 (2018). The partnership is governed by a restated partnership agreement (more about which we'll discuss below).

¶ 7 Around the same time the investor joined CSGR, DHC leased the land under Casa Loma to CSGR for sixty-five years; DHC transferred its ownership of the structural improvements on the property to CSGR (this was also so the investor could qualify for LIHTC); and DHA lent CSGR approximately $45.3 million, $21 million of which was a construction loan that DHA funded by issuing private activity bonds (about $15 million was cash directly from DHA). CSG Housing, acting in its capacity as the general partner, hired DHA as the manager of the property under a written management agreement (another agreement about which we'll talk more below).

¶ 8 Several years later, Mr. Martinez slipped and fell on an allegedly icy walkway leading to the building. He sued CSGR, claiming over $400,000 in medical expenses. As noted, the district court dismissed his complaint based on governmental immunity.

## II.    Discussion

¶ 9    Mr. Martinez contends that the district court erred by (1) concluding that CSGR is an instrumentality of DHA; (2) ruling that the "public building" exception doesn't apply; and (3) failing to address his argument that the "recreation area" waiver in section 24-10-106(1)(e) applies.

### A.    Standard of Review

¶ 10    To the extent historical facts relevant to the issues Mr. Martinez raises on appeal were disputed, we review the district court's findings of fact for clear error, *Medina v. State*, 35 P.3d 443, 452 (Colo. 2001); such a finding is clearly erroneous only if there's no support for it in the record, *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1384 (Colo. 1994).  But to the extent all such facts relevant to a particular issue weren't disputed, we review the issue de novo.  *Young v. Brighton Sch. Dist. 27J*, 2014 CO 32, ¶ 10.  And to the extent that CSGR's claim to immunity implicates questions of law, including statutory interpretation or application of a proper legal standard, we review the district court's conclusions de novo.  *See Corsentino v. Cordova*, 4 P.3d 1082, 1087 (Colo. 2000).

## B.    Analysis

### 1.    CSGR is an Instrumentality of a Public Entity

¶ 11    First, Mr. Martinez contends that his claim isn't barred by the CGIA because CSGR's status as a private partnership precludes its treatment as a "public entity." He points to the investor's significant capital contributions, the investor's approval power over some of CSGR's operations, and that much of DHA's investment came from the sale of private activity bonds. While these facts have some force, we ultimately conclude that they don't carry the day.

### a.    Applicable Law

¶ 12    The CGIA gives public entities immunity from claims "which lie in tort or could lie in tort," subject to certain express exceptions. *See* § 24-10-106(1). It defines "public entity" as

> the state, the judicial department of the state, any county, city and county, municipality, school district, special improvement district, and every other kind of district, agency, instrumentality, or political subdivision thereof organized pursuant to law and any separate entity created by intergovernmental contract or cooperation only between or among the state, county, city and county, municipality, school district, special improvement district, and every other kind of district, agency, instrumentality, or political subdivision thereof.

6

§ 24-10-103(5), C.R.S. 2018.

¶ 13    Though no statute defines the term "instrumentality," several cases shed light on its meaning.  In *Robinson v. Colorado State Lottery Division*, a division of this court held that by including the term "instrumentality" with other entities that are public in nature, the General Assembly intended that covered instrumentalities be "governmental in nature."  155 P.3d 409, 414 (Colo. App. 2006), *aff'd in part, rev'd in part on other grounds*, 179 P.3d 998 (Colo. 2008).  The division concluded that Texaco, a private corporation that was licensed by the State of Colorado to sell lottery tickets, wasn't an instrumentality since there was "no indication that the General Assembly intended to expand the scope of the [C]GIA to include any private person or corporation that entered into some type of agreement with a public entity."  *Id.*

¶ 14    Similarly, in *Moran v. Standard Insurance Co.*, 187 P.3d 1162 (Colo. App. 2008), another division of this court, relying heavily on the division's decision in *Robinson*, held that Standard Insurance Company, a private company, wasn't an instrumentality merely because a public entity, the Public Employees' Retirement Association (PERA), was statutorily required to contract with a

7

private insurance company (and it chose Standard). "Standard's status as a private corporation," the division wrote, "even one that has entered a contract with a public entity, precludes its treatment as a public entity under the CGIA." *Id.* at 1166.

¶ 15 Several years later, in *Colorado Special Districts Property & Liability Pool v. Lyons*, 2012 COA 18, another division leaned on *Robinson* and *Moran* in holding that County Technical Services, Inc. (CTSI) *was* an instrumentality, for four reasons: (1) CTSI was a nonprofit corporation formed by Colorado counties "exclusively for the purpose of lessening the burden on Colorado county governments"; (2) it was founded and maintained by public entities; (3) those public entities were involved in CTSI's management or control; and (4) the supreme court had said in another case that public corporations like CTSI "are created as subdivisions of the state as an expedient device to carry out the functions of government." *Id.* at ¶¶ 40-43 (quoting *Colo. Ass'n of Pub. Emps. v. Bd. of Regents of Univ. of Colo.*, 804 P.2d 138, 143 (Colo. 1990)).

¶ 16 Each of these cases also drew on the CGIA's "central legislative purpose" of limiting liability to lessen the burden on taxpayers. *See, e.g., Robinson,* 155 P.3d at 414.

## b.    Analysis

¶ 17     It appears to be undisputed that CSGR is a private partnership.  But we conclude that fact isn't dispositive.  What is dispositive, as *Robinson* tells us, is that the entity must be "governmental in nature."  *Id.*  And *Lyons* shows us that an entity can be governmental in nature if a governmental entity controls it and it serves a public purpose.  *See Lyons*, ¶¶ 40-43; *accord Walker v. Bd. of Trs.*, 69 F. App'x 953, 957 (10th Cir. 2003) (board of trustees of a pension plan wasn't an instrumentality of the Denver Regional Transportation District (RTD) where it was independent from RTD, RTD had no authority over it, and it didn't have any obligation to act in RTD's interests); *Plancher v. UCF Athletics Ass'n*, 175 So. 3d 724, 728 (Fla. 2015) (the UCF Athletics Association was entitled to governmental immunity because the University of Central Florida, a state agency, created the association and controlled its board of directors, operations, activities, and "continued existence"); *Daughton v. Md. Auto. Ins. Fund,* 18 A.3d 152, 163-65 (Md. Ct. Spec. App. 2011) (insurance fund controlled by public entities and which provided for the public's welfare was

9

an instrumentality of the state despite having a private financial and corporate identity). Those elements are present here.

¶ 18    Notwithstanding the investor's high ownership percentage, DHA controls most of CSGR's operations. Pursuant to CSGR's amended partnership agreement, DHA's instrumentality, CSG Housing (as the sole general partner and manager), has "full and exclusive power and right to manage and control the business and affairs of the partnership." And DHA itself acts as CSGR's property manager for Casa Loma. The management agreement requires it to maintain, repair, and operate the property — in short, to run Casa Loma on a day-to-day basis. It was DHA that oversaw and carried out the renovation project, selecting the architect and general contractor, supervising the renovation work, monitoring compliance with the construction documents, and sponsoring the work.

¶ 19    The partnership agreement also provides that the investor, as a limited partner, "shall not take part in the management or control of the business of the partnership[.]" Nonetheless, we acknowledge that that doesn't mean the investor has no authority at all. The investor has approval power over a number of subjects, including CSGR's budget, quarterly financial reports, annual financial

statements, and renovation plans.  It also has the right to remove the general partner — CSG Housing — for any one of twelve stated reasons.  And CSG Housing must seek the investor's consent before withdrawing as general partner.

¶ 20    CSGR downplays these provisions, arguing that "such purported limitations are meaningless" and that the investor has "never technically approved any of the budgets" or "questioned any expenditures contained in the proposed budgets."  We reject the notion that we should disregard the investor's contractual power to disapprove certain matters merely because the investor hasn't exercised it.

¶ 21    All that said, however, considering that the investor's authority is mostly limited to certain approval rights, CSG Housing manages CSGR, and DHA makes all of the day-to-day operational decisions, we conclude that public entities essentially control CSGR.[3]

---

[3] It also appears undisputed that taxing authorities treat CSGR as a governmental entity.

¶ 22    And CSGR serves a public purpose: providing low-income housing. This is a function typically carried out by governmental entities, and the use of some private funding doesn't negate that. *See Griffin v. City of Detroit*, 443 N.W.2d 406, 407 (Mich. Ct. App. 1989) (ownership and operation of a low-income housing project was a "governmental function").

¶ 23    Until CSGR brought in the investor as a limited partner, it was entirely made up of, and controlled by, DHA and its instrumentalities. The investor only became involved because DHA wanted to limit its debt and needed more money to renovate and operate its properties. One way to do so was to attract private investors using the incentive of low-income housing tax credits. We decline to hold that any public entity that receives private funds through LIHTC, in addition to public funds, thereby loses its status as a public entity, particularly when the private investor exercises minimal control over the entity's operations.[4]

---

[4] We note that CSGR's structure appears to be typical for entities seeking to take advantage of LIHTC: a project sponsor (generally a housing authority or other governmental entity) partners with a private investor in a limited partnership. The housing authority acts as a general partner, maintaining authority over the project,

12

¶ 24 Our conclusion that CSRG is an instrumentality doesn't conflict with *Robinson* or *Moran*. The division in *Robinson* said that instrumentalities must be "governmental in nature," but it did so in the context of holding that Texaco, a purely private corporation, wasn't an instrumentality. *See Robinson*, 155 P.3d at 414. *Moran* involved similar reasoning. *See Moran*, 187 P.3d at 1166.

¶ 25 CSGR has never been "private" in the same sense — as noted, it was made up entirely of public entities when founded, and it only became a "private" partnership when the investor joined as a limited partner. That's very different from Texaco, whose only relationship with a public entity was a license to sell lottery tickets, or Standard Insurance Company, which only provided services to state employees because of a contract with PERA. And, of course, no public entity controlled Texaco or Standard Insurance Company.

¶ 26 We would be remiss, however, if we failed to address *Acevedo v. Musterfield Place, LLC*, 98 N.E.3d 673 (Mass. 2018), on which Mr.

---

while the investor steps in as a limited partner and has a "passive role" despite its high ownership percentage. Mark P. Keightley, Cong. Research Serv., RS22389, An Introduction to the Low-Income Housing Tax Credit 4 (2019).

Martinez relies. *Acevedo* addressed a question similar to the one we consider today — whether an entity created to take advantage of LIHTC, made of (1) a managing member controlled by a housing authority and (2) a private investor with over a 99% ownership interest but little management power, is entitled to governmental immunity. The court ultimately concluded that the entity in that case, Musterfield Place, wasn't a "public employer" under Massachusetts' Tort Claims Act, and therefore wasn't entitled to immunity. *Id.* at 677.

¶ 27    *Acevedo* is distinguishable. The Massachusetts Tort Claims Act differs from the CGIA in a few key ways. Unlike the CGIA, the Massachusetts Tort Claims Act doesn't grant immunity to "public entities." Instead, it limits immunity to "public employers." Mass. Gen. Laws Ann. ch. 258, § 2 (West 2009). And while instrumentalities are included in the CGIA's definition of "public entity," they aren't included in the Massachusetts statute's definition of "public employer."

¶ 28    The Massachusetts Supreme Judicial Court relied on the Massachusetts statute's language, including the absence of the term "controlled affiliate" (a term used in the LIHTC statute) in

concluding that Musterfield Place and its managing entity, Musterfield Manager, weren't entitled to immunity. *See id.* at 676-77. The CGIA's definition of "public entity," however, is broader, and, as discussed, contemplates entities controlled by other public entities. In addition, the managing member of the limited liability company — Musterfield Manager — wasn't itself a public employer, but was instead a private contractor. In contrast, the entities with management authority over CSGR — DHA and CSG Housing — are public entities.

¶ 29 We also reject Mr. Martinez's contention that since some of DHA's loans to CSGR were funded by issuing private activity bonds, CSGR can't be a public entity under the CGIA. Under the Internal Revenue Code (IRC), a certain percentage of the proceeds from these types of bonds must be for "private business use" or must be to "persons other than governmental units." 26 U.S.C. § 141(a), (b), (c) (2018). Private business use is defined as "use (directly or indirectly) in a trade or business carried on by a person other than a governmental unit." § 141(b)(6)(A).

¶ 30 But a "governmental unit" under the IRC and a "public entity" or "instrumentality" under the CGIA aren't the same thing. The

15

Code of Federal Regulations defines a governmental unit as "a State, territory, a possession of the United States, the District of Columbia, or any political subdivision thereof[.]" 26 C.F.R. § 1.103-1(a) (2018). The term "political subdivision" is further defined as "any division of any State or local governmental unit which is a municipal corporation or which has been delegated the right to exercise part of the sovereign power of the unit." *Id.* This is much more specific than the term "instrumentality," which, while not defined under the CGIA, encompasses more than states and their political subdivisions. *See, e.g.*, *Lyons*, ¶ 45 (concluding that CTSI, a corporation, was an instrumentality).

¶ 31     We also acknowledge that another relevant consideration is whether the taxpayers would bear the burden of any liability imposed on the entity. *See, e.g.*, *Robinson*, 155 P.3d at 414. But the record before us is devoid of evidence as to who would bear the burden of any liability imposed on CSGR. Mr. Martinez *argues on appeal* that any liability would be covered by CSGR's insurance policy, so no burden would reach the taxpayers; CSGR contends that DHA would ultimately be responsible for any liability. The district court made no findings on this issue. Given that it was Mr.

16

Martinez's burden to show subject matter jurisdiction, *see Medina*, 35 P.3d at 452, we can't conclude that this consideration weighs in his favor.[5]

¶ 32    In sum, we conclude that CSGR is an instrumentality of a public entity because of DHA's extensive control over its operations and because of its public purpose.  It is therefore itself a public entity entitled to governmental immunity, unless some statutory exception applies.  We now turn to two such exceptions invoked by Mr. Martinez.

2.    Public Building Open for Public Business

¶ 33    Next, Mr. Martinez contends that even if CSGR is a public entity under the CGIA, we should deem its immunity waived because Casa Loma is a "public building open for public business." *See* § 24-10-106(1)(d)(III) (immunity is waived in an action for injuries resulting from "[a] dangerous condition caused by an accumulation of snow and ice which physically interferes with

---

[5] Mr. Martinez argues that CSGR should have the burden of proving governmental immunity applies.  But that position seems to be contrary to controlling authority.

17

public access on walks leading to a public building open for public business"). We aren't persuaded.

¶ 34 The term "public building open for public business" isn't defined in the CGIA, nor have any Colorado cases directly addressed this term as it is used in this exception. CSGR urges us to apply the plain and ordinary meaning of the term, as the district court did. *See Young*, ¶ 11 ("We look first to the language of the statute, giving words their plain and ordinary meaning[s]."). Looking to dictionary definitions, the district court found that Casa Loma can't be considered a "public building open for public business" since only residents and staff have key cards to enter the building, no public events take place on the premises, and no public business is conducted there.[6] We agree, based on these findings, that Casa Loma isn't a public building open for public business. Though it's owned and operated by DHA instrumentalities, it functions as private residences, not a public building.

---

[6] In fact, residents are prohibited by their lease agreements from allowing anyone they don't know into the building.

18

¶ 35    Other states' case law on the same issue informs our

conclusion.  For example, the Michigan Supreme Court held, in

addressing a claim by a student's mother who had fallen outside a

University of Michigan dormitory while visiting her daughter, that

the dormitory wasn't "open for business by members of the public"

under the state's public building exception to governmental

immunity.  *Maskery v. Bd. of Regents of the Univ. of Mich.*, 664

N.W.2d 165, 166 (Mich. 2003).  In so holding, the court articulated

the following test:

> To determine whether a building is open for
> use by members of the public, the nature of
> the building and its use must be
> evaluated. . . .  If the government has
> restricted entry to the building to those
> persons who are qualified on the basis of some
> individualized, limiting criteria of the
> government's creation, the building is not open
> to the public.

*Id.* at 169 (footnote omitted).

¶ 36    Other cases, taking a similar approach, have held that

low-income housing facilities don't qualify under the exception.

*See, e.g.*, *White v. City of Detroit*, 473 N.W.2d 702, 704 (Mich. Ct.

App. 1991) (the plaintiff fell on a publicly accessible patio outside a

low-income housing facility; that facility wasn't a "public building"

under the governmental immunity exception); *Griffin*, 443 N.W.2d at 407-08 (unit in low-income housing facility wasn't "open for use by members of the public" under the immunity exception because it wasn't used for public offices or for a public purpose). *But see Moore v. Wilmington Hous. Auth.*, 916 A.2d 1166, 1174-75 (Del. 1993) (public housing authority apartment building was a "public building" for purposes of public building exception to governmental immunity).[7]

¶ 37    The reasoning of these cases is persuasive, and so we conclude that Casa Loma isn't a public building open for public business.

¶ 38    The parties cite cases addressing the meaning of "public facility" and "public water facility," parts of two other exceptions to governmental immunity. § 24-10-106(1)(e), (f). These cases variously construe "public" in that context as "a place accessible or

---

[7] The court in *Moore* relied in part on the Michigan Supreme Court's decision in *Green v. State Corrections Department*, 192 N.W.2d 491 (Mich. 1971), which it thought conflicted with the Michigan Court of Appeals' later decisions in *White* and *Griffin*. But the Michigan Supreme Court subsequently approved of both *White* and *Griffin* in *Maskery*, without even mentioning *Green*, in adopting the test we recite above.

visible to all members of the community," *Rosales v. City & Cty. of Denver*, 89 P.3d 507, 509 (Colo. App. 2004) (quoting Webster's Third New International Dictionary 1836 (1986)), *overruled on other grounds by Burnett v. State Dep't of Nat. Res.*, 2015 CO 19; "something that is built or constructed to serve some public purpose," *id.*; "being accessible and beneficial to members of the general public," *City & Cty. of Denver v. Gallegos*, 916 P.2d 509, 511 (Colo. 1996), *disapproved of on other grounds by Corsentino*, 4 P.3d 1082; or "for the benefit of the general public," *id.* They appear to share in common a requirement of public access, and, to that extent, though not directly on point, they support our conclusion.[8] In any event, the "public building" exception, unlike the public

---

[8] The parties cite two other cases dealing with the public building exception. In *Smokebrush Foundation v. City of Colorado Springs*, 2015 COA 80, ¶ 32, *aff'd in part, rev'd in part on other grounds*, 2018 CO 10, the parties conceded that a building housing the administrative operations of a city's gas department was a public building, and the division concluded that the record supported the district court's finding that the building was public. *Springer v. City & Cty. of Denver*, 13 P.3d 794, 797 (Colo. 2000), involved a city-owned theater; its status as a public building wasn't at issue. Both cases, unlike this case, involved buildings open to the public.

facility exception, is limited to such buildings "open for public business."  As discussed, Casa Loma isn't open for public business.

### 3. Recreation Area Waiver

¶ 39 Lastly, Mr. Martinez contends that the district court erred by failing to address his argument that the "recreation area" waiver to CGIA immunity applies in this case.  *See* § 24-10-106(1)(e) (immunity is waived in cases claiming injury resulting from a dangerous condition of a "public facility located in any park or recreation area maintained by a public entity").  We don't see any reversible error.

¶ 40 Mr. Martinez didn't present any evidence showing that Casa Loma is a "public facility located in a park or recreation area[.]"  Casa Loma is a low-income housing facility; it's not in a park, and, although it includes an area with picnic tables and grills, those amenities are for private use by Casa Loma residents and their guests only.  Those amenities don't turn this into a  facility "located in a recreation area."  Accordingly, we discern no reversible error in the district court's failure to address this argument.

### III. Conclusion

¶ 41 The district court's judgment is affirmed.

JUDGE TERRY and JUDGE GROVE concur.