24CA0101 Baugh v Walden 01-02-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0101
Jackson County District Court No. 23CV30001
Honorable Stephen J. Jouard, Judge

Waylon Baugh, as personal representative for the Estate of Leslie Baugh,

Plaintiff-Appellee,

v.

Town of Walden, Colorado,

Defendant-Appellant.

ORDER VACATED AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE SULLIVAN
J. Jones and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 2, 2024

Bachus & Schanker, LLC, Brian C. Petroff, Scot C. Kreider, Denver, Colorado, for Plaintiff-Appellee

Tucker Holmes, P.C., Bradley D. Tucker, Michael T. Sullivan, Centennial, Colorado, for Defendant-Appellant

¶ 1 Defendant, the Town of Walden, appeals the district court's order denying its C.R.C.P. 12(b)(1) motion to dismiss plaintiff Leslie Baugh's negligence and premises liability claims under the Colorado Governmental Immunity Act (CGIA), §§ 24-10-101 to -120, C.R.S. 2024. We vacate the court's order and remand the case with directions.[1]

## I. Background

¶ 2 In September 2021, Baugh, a Walden resident, sustained injuries when he fell after stepping in a pothole in the middle of a paved street in Walden. Baugh brought claims for negligence and premises liability against Walden, alleging it was liable for his injuries because the pothole constituted a "dangerous condition" under the CGIA. Walden moved to dismiss Baugh's claims for lack of subject matter jurisdiction under Rule 12(b)(1), asserting immunity from suit under the CGIA.

---

[1] Leslie Baugh died while this appeal was pending. The personal representative for Baugh's estate subsequently moved to substitute himself as the appellee under C.R.C.P. 25(a) and section 13-20-101, C.R.S. 2024. We granted the personal representative's motion on November 1, 2024.

1

¶ 3     The district court held a *Trinity* hearing to determine whether Walden had waived its immunity. *See Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 924 (Colo. 1993). Based on the evidence presented at the *Trinity* hearing, the court made the following findings of fact in a detailed written order:

- The pothole was seven feet long and approximately four feet wide, with a depth of more than two-and-a-half inches.

- The pothole was located near the middle of the street, in the street's traveled portion.

- The evidence conflicted regarding whether Walden had notice of the pothole before Baugh's fall. Walden's town clerk had never received a complaint regarding the pothole before Baugh's fall. But at a town meeting shortly after Baugh's fall, community members complained about the pothole, saying it had been there for three years. The mayor responded by saying, "yeah I know about that."

- Community members commented at the town meeting shortly after Baugh's fall that the streets were a

"disaster," and suggested that Walden would be better off having dirt roads.

- Walden's streets department developed a pothole plan for 2021 that identified areas in need of street repair. But the plan didn't identify the area of the pothole as one of the areas in need of street repair.

- Walden inspected the town's roads annually to identify "problem areas" in need of repair.

¶ 4    The court concluded that the pothole fell within one of the CGIA's immunity waiver provisions — "[a] dangerous condition of a public highway, road, or street which physically interferes with the movement of traffic on the paved portion, if paved . . . ." § 24-10-106(1)(d)(I), C.R.S. 2024. The court therefore denied Walden's motion to dismiss and ordered it to file an answer to Baugh's complaint.

¶ 5    Walden now appeals the court's denial of its motion to dismiss, bringing this interlocutory appeal under section 24-10-108, C.R.S. 2024. Walden contends that the court erred by determining that the pothole constituted a dangerous condition for which it had waived immunity under the CGIA. In support, Walden

3

leans heavily on *Maphis v. City of Boulder*, 2022 CO 10, a recent CGIA case from our supreme court that Walden cited in its dismissal motion but which the district court didn't address in its order. Walden also requests an award of its reasonable attorney fees under section 13-17-201, C.R.S. 2024.

## II. Standard of Review

¶ 6 "Questions of sovereign immunity — including whether it has been waived — implicate a district court's subject matter jurisdiction under C.R.C.P. 12(b)(1)." *Bilderback v. McNabb*, 2020 COA 133, ¶ 6; *see Trinity*, 848 P.2d at 924. We review the district court's findings of fact for clear error. *Medina v. State*, 35 P.3d 443, 452 (Colo. 2001). A finding of fact is clearly erroneous only when it has no support in the record. *Martinez v. CSG Redevelopment Partners LLLP*, 2019 COA 91, ¶ 10. Once questions of fact are resolved, we review questions of law de novo. *City & Cnty. of Denver v. Dennis*, 2018 CO 37, ¶ 12. The plaintiff shoulders the burden of proving that the government waived its immunity. *Id.* at ¶ 11.

¶ 7 Because the CGIA derogates Colorado's common law, we strictly construe its grant of immunity but construe its waiver

4

provisions broadly. *Maphis*, ¶ 17; *Corsentino v. Cordova*, 4 P.3d 1082, 1086 (Colo. 2000).

### III.  CGIA Law

¶ 8      The CGIA grants public entities immunity for claims that lie in tort or could lie in tort. § 24-10-108; *Maphis*, ¶ 17.  But the CGIA contains exceptions.  One such exception says that immunity is waived for claims of injuries resulting from "[a] dangerous condition of a public highway, road, or street which physically interferes with the movement of traffic on the paved portion, if paved, . . . of any public highway, road, street, or sidewalk within the corporate limits of any municipality . . . ." § 24-10-106(1)(d)(I).  The CGIA defines a "dangerous condition" as

> a physical condition of a facility or the use thereof that constitutes an *unreasonable risk* to the health or safety of the public, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity or public employee in constructing or maintaining such facility.

§ 24-10-103(1.3), C.R.S. 2024 (emphasis added).

¶ 9      To show an unreasonable risk to the public's health or safety, the plaintiff must prove that the condition created "a chance of

injury, damage, or loss which exceeded the bounds of reason." *Dennis*, ¶ 23; *accord Maphis*, ¶ 22. A court must examine the totality of the circumstances to determine whether a particular condition presented an unreasonable risk. *Maphis*, ¶ 22; *see also Dennis*, ¶ 23 (determining whether a condition constitutes an unreasonable risk will "necessarily be a fact-specific inquiry").

¶ 10 In *Maphis,* the supreme court considered whether the City of Boulder had waived its sovereign immunity under circumstances somewhat analogous to the facts presented in this case. The plaintiff in *Maphis* argued that a largely imperceptible two-and-a-half-inch deviation in a sidewalk that caused her to trip and suffer injuries constituted an unreasonable risk for which immunity was waived. *Id.* at ¶¶ 3-4, 8. The supreme court disagreed, determining that the sidewalk deviation, while perhaps a foreseeable risk, didn't rise to a dangerous condition that created a chance of injury that exceeded the bounds of reason. *See id.* at ¶¶ 23-30. In assessing the totality of the circumstances, the *Maphis* court looked to certain nonexhaustive factors, explaining that (1) sidewalk deviations "are commonplace throughout Colorado due to the harsh climate and other environmental factors"; (2) the sidewalk deviation wasn't

6

located in a high foot-traffic area, but rather in a residential area "without any heightened safety concerns" that might apply to places such as the entrance to an assisted-living facility, hospital, school, or daycare; and (3) the city hadn't received any citizen reports concerning the sidewalk. *Id.* at ¶¶ 27-28. As a result, the *Maphis* court concluded that the plaintiff failed to establish the existence of a dangerous condition for which the city had waived immunity. *See id.* at ¶ 30.

## IV. Analysis

¶ 11 Applying the *Maphis* framework and construing the CGIA's waiver provisions broadly, as we must, we conclude that Baugh failed to establish that the pothole created a chance of injury, damage, or loss to a pedestrian that exceeded the bounds of reason. Baugh therefore didn't prove that Walden waived its immunity under the CGIA.

### A. Commonplace Condition

¶ 12 We first address whether the pothole was a "commonplace" street condition due to harsh climate, other environmental factors, or other reasons. *Id.* at ¶ 27; *see also id.* at ¶ 29 ("[T]he purposes of the CGIA suggest that the frequency with which a particular

condition occurs is an appropriate consideration when evaluating whether governmental immunity has been waived.").

¶ 13 The court found that Walden residents commented at a community meeting shortly after Baugh's fall that the town's streets were a "disaster," suggesting potholes are common in Walden. However, relying on Baugh's expert's testimony, the court found that the pothole's dimensions fell on the large side, measuring "7 feet long and approximately 4 feet wide with a depth of more than [2.5] inches." Photographs admitted into evidence show that the pothole was two-and-a-half inches deep at its deepest point.

¶ 14 Based on the court's findings, we conclude that, although potholes may be pervasive in Walden, *see id.* at ¶ 27, we can't say on this record that a seven-foot by four-foot pothole that goes down to a depth of two-and-a-half inches constitutes a "commonplace," "widespread," or "frequen[t]" condition, *id.* at ¶¶ 27, 29. At the same time, we can't say that a pothole of this size was so rare and unexpected in Walden that it necessarily created a risk of injury, damage, or loss that exceeded the bounds of reason. *See id.* at ¶ 24 (sidewalk deviation that exceeded the city's criteria for a tripping hazard by "three fold" wasn't necessarily a "dangerous condition"

under the CGIA).  Accordingly, we conclude this factor is neutral, weighing neither in favor of nor against waiving Walden's immunity.

### B.    Condition in Location of Heightened Safety Concern

¶ 15    Next, we turn to *Maphis*'s second factor — whether the pothole was located in "a high foot-traffic area or an area of heightened public concern." *Id.* at ¶ 28.

¶ 16    The court found that, "[a]lthough the precise location of the pothole in the street was not entirely clear, [Baugh's expert] testified that he believed the pothole was located somewhere near the middle of the street in the traveled portion of the road."  The court didn't find that the pothole was located in a high foot-traffic area or an area of heightened public safety concern, nor would we expect such a finding for a pothole located in the middle of a street.  Notably, the largely imperceptible concrete deviation in *Maphis* occurred on a sidewalk, not a street, and yet the supreme court still held that the plaintiff hadn't shown a condition creating a chance of injury that exceeded the bounds of reason.  *See id.* at ¶ 27.  Consistent with the *Maphis* court's analysis, we conclude that this second factor weighs in Walden's favor.

## C.    Reports Regarding the Condition

¶ 17    We next look to *Maphis*'s third factor — whether Walden had received any citizen reports about the pothole. *Id.* The supreme court explained that, under this factor, "frequent citizen reporting would be additional evidence that might help a plaintiff meet the burden of proof." *Id.* at ¶ 28.

¶ 18    The court found that Walden's town clerk had never received a complaint regarding the pothole before Baugh's fall, even though the pothole was in close proximity to the Walden town hall and the homes of town board members. The court also found that Walden's pothole repair plan for 2021 didn't include the area in which the pothole was located, providing further corroboration that citizens hadn't alerted the town to the pothole. Based on these findings, we conclude that *Maphis*'s third factor weighs in Walden's favor.

¶ 19    We aren't persuaded otherwise by Baugh's argument that *Maphis*'s third factor is inconsistent with the CGIA. According to Baugh, requiring proof that citizens have complained about a potentially risky condition runs contrary to the CGIA's definition of "dangerous condition," which states that the public entity's knowledge can be established through constructive knowledge. *See*

§ 24-10-103(1.3) (defining "dangerous condition," in part, as a condition "which is known to exist or which in the exercise of reasonable care should have been known to exist").  But the *Maphis* factors, including its reporting factor, zero in on a different part of the definition — whether the condition "constitutes an unreasonable risk" — not whether the public entity knew or should have known about the condition.  *Id.*; *see Maphis*, ¶ 27.  Although the same evidence may be relevant to both parts of the statutory definition, evidence that the public entity knew or should have known of the condition may or may not be enough to prove that the condition amounted to an unreasonable risk.  In *Maphis*, for example, unlike in this case, the city had identified the sidewalk deviation as needing repairs *before* the plaintiff suffered injuries.  *See id.* at ¶ 26.  But the city's advance knowledge still wasn't sufficient to render the deviation an unreasonable risk that exceeded the bounds of reason.

### D.    Application

¶ 20    Applying the *Maphis* framework to the facts of this case as found by the district court, two of the *Maphis* factors weigh in Walden's favor while one factor is neutral.  On balance, we

11

conclude, based on the totality of the circumstances, that Baugh failed to prove that the pothole created a chance of injury, damage, or loss that exceeded the bounds of reason. *See id.* at ¶ 22. Just as the sidewalk deviation in *Maphis* didn't constitute an unreasonable risk, we can't say that the pothole rose to an unreasonable risk under the CGIA's definition of "dangerous condition." *See* § 24-10-103(1.3). Thus, the court should have granted Walden's Rule 12(b)(1) motion and dismissed the case for lack of subject matter jurisdiction. *See Bilderback*, ¶ 6.

¶ 21 Baugh nevertheless argues that *Maphis* and its predecessor, *Dennis*, reflect a "sea change" in how courts apply the CGIA and that the two cases create "new and difficult questions." Baugh also asserts that whether a given risk is "beyond the bounds of reason" is "inherently subjective," and that each judge or justice up and down the appellate ladder is now entitled to evaluate the undisputed facts differently, imposing an onerous burden on a plaintiff's ability to present their case to a jury.

¶ 22 We recognize that judicial interpretations of the CGIA haven't remained static over the decades. But we are bound by the supreme court's decisions, including its recent holdings,

interpreting and applying the CGIA. *Bernal v. Lumbermens Mut. Cas. Co.*, 97 P.3d 197, 203 (Colo. App. 2003) (court of appeals is bound by the Colorado Supreme Court's decisions). Moreover, because the proper interpretation and application of the CGIA implicates a court's subject matter jurisdiction, we necessarily apply a de novo standard of review and aren't bound by the district court's legal determination. *See City of Colorado Springs v. Conners*, 993 P.2d 1167, 1171 (Colo. 2000). This standard of review under the CGIA long predates *Maphis* and *Dennis*. *See, e.g., Swieckowski v. City of Fort Collins*, 934 P.2d 1380, 1383-84 (Colo. 1997).

¶ 23    Accordingly, we vacate the court's order denying Walden's motion to dismiss and remand the case with directions that the court dismiss Baugh's claims for lack of subject matter jurisdiction under the CGIA.

## V.    Attorney Fees

¶ 24    Walden requests an award of its reasonable attorney fees, including those incurred on appeal, under section 13-17-201. Under that statute, the defendant in a tort action that is dismissed under Rule 12(b) before trial "*shall* have judgment for his reasonable attorney fees in defending the action." § 13-17-201(1)

13

(emphasis added); *see also Smith v. Town of Snowmass Village*, 919 P.2d 868, 873 (Colo. App. 1996) ("[A]n an award of attorney fees is mandatory when a trial court dismisses an action under the [C]GIA for lack of subject matter jurisdiction."). Because we've concluded that the court should have granted Walden's Rule 12(b)(1) motion, we agree that Walden is entitled to an award of its reasonable attorney fees, including those incurred on appeal. However, because the district court is best positioned to determine the amount of Walden's reasonable attorney fees, we remand the case to the district court to determine the amount of those fees. *See* C.A.R. 39.1.

## VI. Disposition

¶ 25 We vacate the court's order denying Walden's motion to dismiss and remand the case to the district court with instructions to (1) dismiss Baugh's claims for lack of subject matter jurisdiction under the CGIA and (2) determine the amount of Walden's reasonable attorney fees.

JUDGE J. JONES and JUDGE LIPINSKY concur.